JAY SLOCUM *et al.*

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

1. CRIMINAL LAW—*abduction—enticing female for prostitution.* Under the statute making it an offense punishable in the penitentiary to entice or take away an unmarried female of a chaste life and conversation from her parents house, or wherever she may be found, for the purpose of prostitution or concubinage, or to assist in such abduction, it is sufficient to constitute the crime that a girl living with her parents is induced, by persuasion or enticements, to go to some convenient place from her father's house, in the immediate neighborhood, for the purpose of prostitution, where she is gone only for an hour or two at a time, she continuing to dwell with her parents all the time.

2. Enticing or taking away a female from the parents' house for the purpose of prostitution is clearly within the language of the statute, be that taking or enticing to a place distant or near, or be it for a long or a short space of time. The gist of the offense is the taking or enticing away from the parents' house.

3. Where a young woman living with her parents is induced or enticed by a man to leave home and meet him for a few hours, and have illicit intercourse with him, within a few rods of her home, after which she returns to her parents' house, as usual, the case is clearly not within the scope of the statute, as it lacks the necessary ingredient of·the offense—of an intention to reduce the female to a condition of either common prostitution or concubinage.

4. SAME—*kind of inducements to persuade not material.* The kind and extent of seductive arts which will satisfy the law in such case do not depend upon any absolute rule. If the inducements held out do, as a matter of fact, entice a young woman from her parents' house, then both the letter and spirit of the statute are met, so far as the taking or enticing is involved.

5. SAME—*purpose of enticing away.* It seems the enticing of· a female from her parents' house solely for the purpose of having illicit sexual intercourse with her by the party so enticing, is not an offense, under the statute, unless such intercourse is of such a character as amounts to concubinage. The purpose must be prostitution or concubinage.

6.  The purpose of taking or enticing a young woman from her home contemplated by the statute is one existing in the mind of the perpetrator of the offense, and the law does not require that such purpose should exist in the mind of the victim, or be disclosed or known to her at the time. It is not necessary to the offense that the guilty party shall succeed in reducing the female to a state of concubinage or to that of a common prostitute.

7.  Under this statute the female abducted or enticed away must possess actual personal virtue, as distinguished from good reputation. But the law will presume her previous life and conversation were chaste, and the burden of proof is on the defendant to show otherwise; and her previous virtue can not be impeached by her lewd life and conversation after she has been enticed away and had her mind and morals corrupted by the defendant.

8.  The enticing of a young woman to leave her parents' house and come to the defendant's, where he finally succeeded in overcoming her virtue, after which he had connection with her two or three times a week, for about nine months, with proof of solicitation on the part of the defendant to her to live with him, promising her money and clothes, and to treat her as well as his wife, is sufficient to convict the defendant under a count for enticing the young woman away from home for the purpose of concubinage.

WRIT OF ERROR to the Circuit Court of Henry county; the Hon. JOHN J. GLENN, Judge, presiding.

This was an indictment against Jay Slocum and Rose Slocum for the abduction of Alcinda Templeton, containing two counts. The first charges the defendants with having enticed Alcinda Templeton, an unmarried female of chaste life and conversation, from her parents' house, for the purpose of prostitution. The second charges them with having enticed her away from her parents' house for the purpose of concubinage. A trial was had, resulting in a verdict finding the defendants guilty, and fixing their term of imprisonment at eight years in the penitentiary, upon which the court rendered judgment.

Messrs. M. SHALLENBARGER & SON, for the plaintiffs in error.

Mr. T. E. MILCHRIST, for the People.

Mr. JUSTICE BAKER delivered the opinion of the Court:

· We are called upon to give a construction to the first section of the Criminal Code, Revised Statutes 1874, p. 352, which reads as follows:

"Whoever entices or takes away any unmarried female of a chaste life and conversation from the parents' house, or wherever she may be found, for the purpose of prostitution or concubinage, and whoever aids and assists in such abduction for such purpose, shall be imprisoned in the penitentiary not less than one nor more than ten years."

The first question that arises upon this record is, as to what constitutes an enticing or taking away from the parents' house, within the purview of this statute. Is it sufficient that a girl living with her parents is induced, by persuasion or enticements, to go to some convenient place, away from her father's house but in the immediate neighborhood, for the purposes of prostitution, where she is gone only for an hour or two at a time, she continuing all the while to dwell with the parents, as usual? We think it plain, both upon reason and authority, that the taking or enticing is not necessarily to a place distant from the family residence, or that any particular length of distance is required in order to bring the case within this requirement of the statute. If any fixed distance is a prerequisite to the commission of the offense charged, then it is difficult to perceive how or by what means we are to ascertain · what this required distance is, and to distinguish cases without the statute from those within, and determine where the dividing line is. So, also, it would appear it is not essential that the girl should be kept permanently away from the parental home, or that there should be any intention so to keep her. Bishop's Stat. Crimes, 637.

Under English enactments of a somewhat similar character, it was held to be a sufficient taking where the girl was taken for an hour or two from her father's house and married, but not defiled. *Regina* v. *Baillie*, 8 Cox C. C. 238. And in

*Regina* v. *Timmins*, 8 Cox C. C. 401, it was held sufficient where the defendant had been three days sleeping with her at night. In *People* v. *Parshall*, 6 Parker's C. R. 129, which was prosecuted under a New York statute making it a penal offense to take away any female under the age of fourteen years from her father, mother, guardian, or other person having the legal charge of her person, it was held that to constitute a taking under the statute there must be some positive act to get the female away from the person having the legal charge of her, and that a mere seduction did not amount to a taking; but in that case it did not appear that the defendant ever was at the house of the person having charge of the girl, nor does it appear from the report of the case that he ever assisted or influenced her to leave such person for any distance whatever, or for any space of time, however temporary. The opinion states, "all the meetings he had with her were in the streets, and the testimony of the girl does not tend to show that there was any taking of her, in the sense of the statute." It does not appear that the meetings were even preconcerted. The girl had already left the person under whose control she was, and the defendant then met and attempted to seduce her. The case only reiterates the well-established principle, that if the female leaves her home of her own accord, and without any enticement or interference on the part of the prisoner, then the offense can not be committed. Bishop S. C. 634, 640, and authorities there cited.

In *Regina* v. *Miller*, 14 English Reports, by Moak, 633, the girl was in the lawful charge of her master, and not of her father, at the time of the alleged offense, and she had permission from her master to be away, and the prisoner had no connection with the transaction until after she had left his house under such permission. The prosecution was based on 24 and 25 Vict. C. 100, sec. 55, which imposes punishment on any one who shall unlawfully take an unmarried girl under the age of sixteen years "*out of the possession and against the will*" of her father or mother or any other person having the

278      SLOCUM *et al. v.* THE PEOPLE.      [Sept. T.

Opinion of the Court.

lawful care or charge of her." The sole intention of the enactment was to protect the lawful custodian in the possession of female children, and under the circumstances of that case it was held, that there was no taking and keeping such as the law required to sustain a conviction under that statute. Not only was the statute different from ours in phraseology, but its whole scope, meaning and purpose were different.

Enticing or taking away a female from the parents' home, for the purpose of prostitution, is clearly within the language of our statute, be that taking or enticing to a place distant or near, or be it for a long or short space of time. The crime charged is abduction, and it is so styled in the body of the statute. The taking or enticing away from the parents' house is the gist of the offense. Under the English statutes against abducting an heiress, the offense might well be committed although the detention was but temporary and the transaction confined to but an exceedingly limited territory. Such enticing or taking away is also within the intention of our statute. The legislature, in passing the statute under consideration, had undoubtedly in view the punishment of pimps and procurers who entice and carry off young girls and induce them to abandon, for once and all, their homes and the control of their parents for the purpose of becoming permanent inmates of houses of ill-fame or living as concubines; but it also had in view such persons, more especially in large towns and cities, as entice girls from the parents' house to a den of infamy in the immediate neighborhood, for the purpose of prostituting them for pay to whomsoever may come, even though the absences from the parental roof are of but a temporary character. The latter evil is not only as much within the terms of the statute as the former, but is equally within the evils intended to be remedied. We are not inclined to explain away the meaning of a wholesome and remedial statute in order to make an exception of that which is plainly within the mischief intended to be cured.

At the same time we do not wish to be understood as hold-

ing that it was the intention of the General Assembly to make seduction, adultery or fornication a felony, and a crime punishable by confinement in the penitentiary. The case suggested by counsel, where a young woman, living with her parents, is induced or enticed by a man to leave home and meet him for a few hours and have illicit intercourse with him within a few rods of her home, after which she returns to her parents' house as usual, is clearly not within the scope of the statute, as it lacks at least one ingredient, if not more, necessary to constitute the offense. It lacks the ingredient of an intention to reduce the female to a condition of either common prostitution or concubinage.

The second point raised is as to whether the prosecuting witness, in leaving her parents' house, was enticed by defendants, and left in consequence of such enticements. It admits of no doubt, if the evidence of the prosecution is reliable, that the plaintiffs in error were acting in concert in all that was done by either to accomplish the ruin of this young girl. We find from that evidence that almost from their very first acquaintance with the girl, Mrs. Slocum held out inducements to her to come to her house and have intercourse with the co-defendant, but the enticements and allurements suggested were of such character that we do not care to repeat them. Before any act of illicit intercourse, she frequently went to the girl's home to get her to come, frequently sent a boy for her, and called her in from the street as she was passing the house in going down town. The allurements held out were such as would perhaps most usually and naturally repel and disgust a virtuous woman, but then they were such as were calculated to awaken the desires and inflame the imagination and passions, and weaken the moral and prudential restraints that surrounded her. The kind and extent of seductive arts, which will satisfy the law, do not depend upon any absolute rule.

If the inducements held out did, as a matter of fact, entice her from her parents' house, then both the letter and spirit of the statute are met, at least so far as this point is involved.

The next matter that demands consideration is, whether the enticing and taking away in this case were for the purpose of prostitution. We may admit that there is a distinction between prostitution and illegal sexual intercourse with but one person, and that if the prosecuting witness was enticed away f·om home solely for the purpose of having such intercourse with one of the plaintiffs in error, then, unless such intercourse were of a character that it would amount to concubinage, it would not be an offense within this statute. The statute is not against leaving home for the purpose of prostitution; it denounces a penalty against those who entice or take away from home for such purpose. The purpose that is contemplated by the law is one existing in the mind of the perpetrator of the offense; it does not require that such purpose must necessarily exist in the mind of the victim. If the object and motive of a procurer be to get a girl to leave home for the purpose of making her an inmate of a house of prostitution, then it is immaterial that such purpose was not disclosed to or known by the girl.

Tested by this rule there is evidence to show that the purpose was prostitution. Both the plaintiffs in error, as the girl testifies, tried to induce her to enter upon a life of prostitution,— to have intercourse with other men whom they would get and bring to the house, and who would pay her therefor, telling her that she could make money that way. They also attempted to persuade her to stay with them rather than at home, promising her that she could go to dances and have money when she wanted it, and that they would furnish her with clothes. These inducements were first held out to her shortly after her seduction was accomplished. Again, it is impossible to account for the conduct of the wife, as detailed by the girl, in aiding in and insisting upon this seduction by, and subsequent illicit intercourse with, her own husband and in her own house, upon any reasonable hypothesis other than that she expected to gain pecuniary reward by the prostitution of the girl.

The fact that she was not reduced to a life of public prosti-

tution militates nothing.  The overt act was committed and the crime fully consummated when she was enticed from her father's house for the purpose of prostitution.  Our statute differs from the statute 3 Henry VII, c. 2, as that statute required, in order to constitute the offense, the woman should afterwards be married to the misdoer, or by his consent to another, or defiled; consequently decisions based on that or kindred statutes of abduction are inapplicable, in such regard, to the case under consideration.

It is argued that Miss Templeton was not a female of chaste life and conversation, and therefore the statutory crime was not committed.  We admit that this clause requires that she shall possess actual personal virtue as distinguished from a good reputation.  The presumption of law is, that her previous life and conversation were chaste, and the onus was upon the defendants to show otherwise.  This presumption is fortified by the undisputed facts, which appear in the evidence, that at the time she first met plaintiffs in error she was under eighteen years of age, that she had always lived with her parents, and for nine years had lived at Woodhull, and went to school and church and mingled with other girls, and moved in respectable society.  Then, she herself testifies that she never had intercourse with any man but Slocum.  The only facts urged to rebut this presumption and proof of chastity are her lewd life and conversation after she had been subjected to the enticements and corruptions of plaintiffs in error.  They are estopped from thus taking advantage of their own wrong.  These persuasions, that poisoned her mind and corrupted her morals, form the very enticements that enter as a necessary ingredient into the crime charged against them.

The relations that existed between Jay Slocum and the prosecuting witness for a period of nearly nine months, would seem to support the second count of the indictment, which charges that she was enticed away for the purpose of concubinage.  He had connection with her three or four times a week in his own house, frequently in the presence of the wife.  As we

have already stated in another connection, they wanted her to live with them, and told her if she did they would let her have money when she wanted it and furnish her with clothes; and Jay Slocum told her he would treat her as well as his wife. The actual living and cohabiting together in a state of concubinage is not required to constitute the offense charged in this count; the crime is committed when the female is enticed from home for the purpose of concubinage. The evidence tends strongly to indicate that it was the purpose of plaintiffs in error that she should live with them as a concubine for the husband and for prostitution with others.

It is urged, that the story told by Miss Templeton is incredible,—that it is unnatural, unreasonable, and contrary to the experience of mankind. This argument is well answered by saying, wives sometimes lead lives of prostitution with the consent and by the solicitation of their husbands; that daughters too often lead lives of shame in houses of ill-fame kept by their parents; and that we learn from the books that offenses of an even more incredible nature than these are sometimes perpetrated. Besides, her testimony is corroborated in some of its material details by that of William Templeton, Mrs. Root and Britwall Taylor. No motive is perceived that would lead her to make the charge, if false. The evidence shows that Jay Slocum was poor and a married man. A false charge of bastardy would naturally be made against one who either had property or was single. If her charge was false she lessened the probability of its being believed by including the wife as a *particeps criminis,* and it is improbable that she would falsely bring such accusation against a married woman with whom she had been on terms of intimacy and friendship, and with whom she had no difficulty other than such as grew out of the charge itself. There is only the uncorroborated testimony of the defendants themselves to contradict the tale she tells, and a number of witnesses impeached the character of one of them for truth and veracity. The jury heard the witnesses upon the stand and saw them face to face, and they

believed the story told by the girl, and we are unable to say that they were not justified in believing it.

No objections are pointed out to the rulings of the court upon the instructions, and such rulings seem to be in substantial conformity with the views herein expressed.

We find no error in the record, and the judgment of the circuit court is affirmed.

*Judgment affirmed.*