## THE STATE v. GIBSON, *Appellant.*

### . DIVISION TWO.

**Criminal Law**: ABDUCTION OF FEMALE UNDER EIGHTEEN YEARS OLD.
An indictment for taking away a female under the age of eighteen
years from her father for the purpose of concubinage and prostitu-
tion is not sustained by proof that defendant's purpose in taking
her away was to hide her disgrace and to shield his son, the father
of her child, from prosecution.

*Appeal from Nodaway Circuit Court.*—HON. C. A.
ANTHONY, Judge.

REVERSED.

*J. C. Wilson, J. M. Sallee* and *William C. Ellison*
for appellant.

(1) The court erred in compelling defendant to go
into trial on an imperfect transcript of the record of the
Harrison circuit court. (2) The court erred in over-
ruling defendant's motion for a continuance. (3) The
court erred in its rulings on the admission and exclusion
of evidence. (4) The court erred in giving instruc-
tions for the state. (5) The second count of the
indictment is insufficient in law to sustain the verdict.
(6) The evidence is not sufficient to sustain the charge.
*Slocum v. People,* 90 Ill. 274; *State v. Goodwin,* 33
Kan. 538; *Osborn v. State,* 52 Ind. 526; *Corn v. Cook,*
12 Met. 93; *People v. Parshall,* 6 Park. Cr. Rep. 129;
*State v. Brow,* 64 N. H. 577; *United States v. Zes
Cloya,* 35 Fed. Rep. 493.

*John M. Wood,* Attorney General, for the State.

(1) What purports to be the bill of exceptions
in this case is dated and signed the second day

of March, 1891, by the circuit judge. There is no record entry authenticating said bill, or showing that same was filed. (2) The second count in the indictment properly charges the offense. If we concede that the words, "by having illicit sexual intercourse with him, the said Larkin A. Gibson, and with him, the said James Gibson, and with divers other men whose names are to the ' grand jury aforesaid unknown," after the word "concubine," were unnecessary, yet they do not render the indictment invalid, as what remains sufficiently informs the defendant of the offense of which he stood charged. Section 4115, Revised Statutes, provides: "No indictment or information shall be deemed invalid * * * for any surplusage or repugnant allegation, when there is sufficient matter to indicate the crime and person charged." Charging that he feloniously took her away for the purpose of concubinage sufficiently charges that the intent was felonious. The indictment follows the statute and charges all the elements of the offense. R. S., sec. 3848.

GANTT, P. J.—This is an indictment, by the grand jury of Harrison county, against the defendant for taking Ida C. Dyche, a female under the age of eighteen years, from her father for the purposes of concubinage and prostitution. The indictment is in two counts, one for prostitution and the other for concubinage. Defendant was found guilty on the second count and sentenced to the penitentiary for three years. At his instance a change of venue was awarded to Nodaway county.

The evidence shows that the alleged crime was committed on the eighteenth day of October, 1888, in Harrison county, Missouri. The defendant was a farmer living in that county. It does not appear how old he was, but he was old enough to have sons from eighteen to twenty years of age. The prosecuting witness lived with her father and step-mother in the same neighborhood. The two families had been neighbors for twenty

years. The nearest railway station was about sixteen miles off. The character of the prosecuting witness was bad. She had been criminally intimate with defendant's eighteen-year-old boy, and was seven months advanced in pregnancy by him at the time of the alleged crime. Her father suspected her condition, and, only a few days before she left him, he accosted her about it. She was very anxious to get away. It seems that, on the day of the alleged crime, William, the minor son of defendant just referred to, was away and had been for some time. He feared prosecution for seduction.

The defendant wanted to prove, on cross-examination, that the prosecuting witness had actually instituted criminal proceedings against the boy, but the evidence was excluded by the court. William's father, the defendant, clandestinely met the prosecuting witness on two occasions, and explained to her why William could not take her away, and told her that he himself would make arrangements to take her to the railway station, and she could go on to St. Joe, at a place named, until she was relieved of her embarrassment. She wanted to go. He told her that he wanted to take her away so that her father would not do anything with Will, his boy. She had before urged upon Will to take her away. She wanted to leave "to get rid of the disgrace." She says she started for St. Joe, that she knew beforehand that she was going there, and that she did go there.

On the day of the alleged crime, her father and step-mother left the prosecuting witness at their home, digging potatoes. It appears that she was accustomed to this kind of labor. Her younger sister was left with her. According to arrangements made before, after her father and step-mother left, she got her clothing together in a packet, and was conducted by a second son of defendant, James, who was jointly indicted with defendant, as before stated, to a ravine near defendant's home, and

also near a wagon road leading to the railway station sixteen miles away, to which defendant was to take her. There she remained waiting for the latter to come along. The ravine was about six feet deep, and she could not be seen from the road. She remained there with James till the defendant came up with his two-horse wagon. She then got into the wagon. Defendant was alarmed lest some one might see her. This was near to three o'clock in the afternoon, and they had sixteen miles to go in a two-horse wagon. At defendant's request she lay down in the wagon, and he covered her with some quilts so she could not be seen. She remained covered until they got out of the neighborhood. · She then got into the seat with defendant.

There was no train for St. Joseph that evening, and they passed the night at a schoolhouse a short distance from the station. Next morning the journey was resumed to the station, where they arrived just as the sun was rising. The defendant was still uneasy lest she might be overtaken; he told her not to tell anybody where she was going. His desire to conceal her identity was as great as the day before, when they started. There is no intimation that he offered to take her back home next morning, or that he was disposed to abandon her, or that his purpose in taking her had been accomplished; but on the contrary the preparations to send her to St. Joseph went on just as it was arranged before they started. They took breakfast and dinner at a hotel kept by one Dr. Wiley, with whom the defendant was acquainted. He had intended to send her off on the morning train, but it had passed before they got to the station. The defendant told Dr. Wiley that the woman was a neighbor girl of his; that she was going to St. Joseph to see her sister, and that they had passed the night "just back here," pointing in the direction whence they came. The defendant purchased a valise for the woman, left directions with Dr. Wiley to see her on the four o'clock St.

Joe train, and started back to his home. The woman went on to St. Joseph, where her child was born about the twenty-fifth of January following, at a charitable institution. In May she returned to her home, and married her step-brother, who had been living in the family. Thereupon this prosecution was commenced, and also a civil suit for $5,000 damages.

The prosecutrix says she had sexual intercourse with defendant that night in the schoolhouse. The evidence shows that the girl went without her father's consent. The defendant complains that the court refused him a continuance and in giving instructions for the state and refusing instructions asked by defendant.

The court of its own motion gave the following: "7. The jury are instructed that, although you may believe from the evidence that the defendant, Larkin A. Gibson, did take Ida C. Dyche from her father, yet, if you further believe from the evidence that Gibson's object and purpose in taking said Ida away was to hide her shame or shield his son, and not for the purpose of concubinage, as in other instructions defined, you will find the defendant not guilty; and this is true, even though the jury should further believe that after taking the girl as above stated ( if he did so take her ) he had sexual intercourse with her at the schoolhouse referred to in the evidence.

"8. The court instructs the jury that the defendant is presumed to be innocent of the offense charged; that, before you can convict him the state must overcome the presumption by proving him guilty beyond a reasonable doubt. If you have a reasonable doubt of defendant's guilt, you must acquit him; but a doubt, to authorize an acquittal, must be a substantial doubt, founded on the evidence, and not a mere possibility of innocence."

For the state the court instructed: "1. The jury are instructed that if they believe from the evidence, that the witness, Ida C. Dyche, was on or about the

eighteenth day of October, 1888, an unmarried female under the age of eighteen years; that she was at the time an inmate of and living with her father's family, and at her father's home in Harrison county, Missouri, and that, while the said Ida C. Dyche was living with her father as aforesaid, the defendant did meet the said Ida and make arrangements with her to take her away from her father's home, and did, afterwards, in pursuance of said arrangement, take her in his wagon and carry her to a schoolhouse in said Harrison county for the purpose of concubinage; that is, *for the purpose of cohabiting with her as man and woman in sexual intercourse, for any length of time, even for a single night,* without the authority of legal marriage, they will find the defendant guilty on the second count of the indictment, and assess his punishment at imprisonment in the penitentiary for a period of not less than two years nor more than five years."

It is very evident that the defendant was guilty of the most reprehensible conduct. It is almost incredible that in an enlightened age, and among civilized people, any man would be so lost to all sense of propriety and decency, as the record shows him to be. And yet, as an appellate court, it is our duty to scan closely this record and determine whether he is guilty *in manner and form as charged in the indictment.*

Now the *gravamen* of the charge of the indictment is the felonious *taking the prosecutrix away from her home for the purpose of concubinage with the defendant.* The state's case is made by the prosecutrix herself. If she is worthy of belief, it is undeniable that the purpose was not concubinage with the defendant, but was a flight to St. Joseph to hide her shame, and shield William Gibson; on her part to escape detection, and on the defendant's part to protect his son from prosecution. The trial judge correctly declared, if this was the case, the defendant should be acquitted, although the defendant after starting with her had

sexual intercourse with her at the schoolhouse on the way to Hamptonville.

To construe the defendant's conduct to mean a purpose of concubinage with himself, under this evidence, would do violence to all the laws of reason, and the common experience of mankind. We think it perfectly clear that the defendant was simply assisting the prosecutrix to get to St. Joseph to cover up her shame, and at the same time protect his son, and the evidence does not sustain the indictment, or the verdict. Judgment is reversed and prisoner discharged. All concur.