State v. Worton.

---

THE STATE v. WORTON, *Appellant.*

Division Two, June 8, 1897.

1. **Indictment; SUFFICIENCY.** An indictment for murder carefully considered and pronounced above criticism.

2. **Instructions:** NO ERROR ASSIGNED: PRACTICE. No exceptions being saved to the giving and refusing of instructions, and error in this regard not having been made a ground for a new trial, an error of the trial court in giving instructions can not be considered in this court.

3. **Premeditated Murder.** The facts reviewed and the conclusion reached that every element of deliberation, premeditation and willful and malicious homicide entered into defendant's crime.

4. **Practice**: CALLING WITNESS AFTER CLOSE OF CASE. It was not error to permit the State to call and examine a witness after it had announced the close of its case but before defendant had made his statement to the jury.

5. ——: CROSS–EXAMINATION OF DEFENDANT. It was not error to permit the State to cross-examine the defendant about matters concerning which he had been interrogated by his own counsel.

*Appeal from St. Louis Criminal Court.*—HON. HENRY L. EDMUNDS, Judge.

AFFIRMED.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) Defendant having failed to except to the instructions given, no objections can be urged against them in this court. *State v. Johnson*, 115 Mo. 495; R. S. 1889, sec. 4270; *State v. Gilmore*, 110 Mo. 7. (2) The evidence discloses malice, premeditation and deliberation on part of the defendant in the commission of the offense and the verdict of murder in the first degree, as returned by the jury, was warranted. *State v. Starr*, 38 Mo. 270; *State v. McCoy* 111 Mo. 525; *State v. Musick*, 71 Mo. 401. (3) It is insisted by defendant in his motion for a new trial that incompetent, irrelevant and immaterial evidence was admitted by the court over the objection of defendant. Upon an examination of the evidence and the objections of defendant made thereto, it is observed that the defendant failed to save his exceptions, and in nearly every case failed to state the reasons for his objection. There was nothing wrong about a cross-question if defendant, in his direct examination, had been interrogated on the same subject. Where no grounds are assigned for objections they will be disregarded on appeal. *State v. Moore*, 117 Mo. 401; *State v. Adams*, 108 Mo. 216; *State v. Harlan*. 130 Mo. 395. (4) After

counsel for State had rested his case and counsel for defense was making his statement to the jury he was interrupted by the circuit attorney, who stated he wanted to introduce witness Edmonstone, whom he had neglected to examine before he closed his case. Whether a party will be permitted to introduce evidence after he has closed his case is a matter almost entirely with the discretion of the court, and his action in the matter will not be disturbed unless the discretion shall be unfairly or unsoundly exercised. *State v. Shroyer*, 104 Mo. 447; *State v. Smith*, 80 Mo. 520; *State v. Linney*, 52 Mo. 41; *State v. Pennington*, 124 Mo. 388. (5) Defendant is not entitled to a new trial on the ground of newly discovered evidence, for the reason that his application therefor was not in legal form. It does not set out such newly discovered evidence, supported by the affidavit of witness or witnesses. No showing is made as to the time when such evidence was discovered or that it was acquired since the trial, or that by diligence it could not have been discovered before the trial. *State v. Musick*, 101 Mo. 260; *State v. Cantlin*, 118 Mo. 100; *State v. Campbell*, 115 Mo. 391; *State v. Welsor*, 117 Mo. 570; *State v. Crawford*, 99 Mo. 74.

GANTT, P. J.—Defendant is charged by the indictment with the murder of Mrs. Louisa Worton, a woman with whom he had cohabited as his wife for some twelve years. They were gypsies, and traveled from place to place, as is the custom of such people. About three months before the date of the murder they were at Bollinger Mills, near Kennett, Missouri, where Mrs. Worton, the deceased, left defendant, taking with her a young girl thirteen years old, a daughter by a former marriage, and went to St. Louis, where defendant found them, three or four days before the offense

was committed, at 918 North Broadway. Defendant called to see the deceased with a view, as he stated, of persuading her to return and live with him. He called again the following day and found her not at home. On Thursday, March 5, 1896, the next day after the second call, defendant went to the room of his said wife about 9 o'clock in the morning. The room was on the second floor of the building at 918 North Broadway, and in which there were several other tenants occupying different apartments. The deceased and her daughter, Pearl, were in bed when defendant entered the room, and at the suggestion of both defendant and his wife, the girl arose and left the room, whereupon, in the course of fifteen or twenty minutes, defendant was seen by several witnesses coming from the room with blood on his hands and clothing and was heard by a witness who was in the wash room of the first floor, to remark that *he had "fixed her."* On coming out upon the street he was discovered by a police officer and arrested. The following facts were narrated in evidence by officer Curley. "I saw he (the defendant) was covered with blood, on his shirt and the collar of his coat, also his hands, and he says, '*I killed my wife.*' I says, 'What is the matter?' and he said, '*I am after killing my wife.*' I says, 'What did you kill her for?' and he says, '*I have been jealous of her going with other men.*' I says, 'What did you kill her with?' and he says, '*a razor.*' I says, 'Where is the razor?' and he says, 'I threw it down after I killed her.'"

On being taken back to the place of the tragedy the defendant admitted to Pearl Riley that he had killed her mother, and after he had been taken to the police station, he voluntarily signed the following statement in the presence of Sergeant King:

"My name is Andrew Worton; I am 33 years of age; I was born in Montreal, Canada; I am a gypsy

of English extraction; I have been off and on coming to St. Louis for about a year past; I am married; my wife's name is Louisa Worton; I married her in Hampton, Virginia, about 12 years ago; she is also a gypsy; we got three children living and three dead; my mother resides in a tent on the north side of Easton avenue, between Pendleton and Newstead avenues; she has lived there about one year; my wife ran away from me at a place called Bollinger's Mills, Kennett, Mo., about two months ago and came to St. Louis; I came to St. Louis three or four days ago and found out that she was at number 918 North Broadway, a rooming house; I went there this morning and saw her in bed with my little 12 year old daughter, on third floor of said house; I told the little girl to go down stairs, which she did; I then pulled out a razor and cut my wife's throat, from the effects of which she died; the reason I done so was because she was sleeping and going with other men; after killing my wife I came down stairs and went along the street toward Washington avenue, and when near Lucas avenue I was arrested; I have no certain place of abode; I trade in horses.''

Defendant set up plea of self-defense, stating in evidence that while in the room talking she became angry and reaching behind her got a razor and drew it on him, at the same time cursing and swearing she would cut his heart out. And when she made at him he caught her arm, took the razor from her and killed her with it.

Archie Edmonstone, a *Star* reporter, testified upon the part of the State that he visited the defendant shortly after the murder, and that defendant told him he had gone to see his wife a few days before he killed her, and asked if she would not return and live with him. He made two or three such calls, and could not

get his wife to consent to it, and on the night before the killing he had a talk with her, and she refused to live with him, *so he went home and decided that he would kill her, and early the next morning he got up, stole his brother's razor out of his trunk, and with that went to the house where the woman lived and, after sending the little girl down out of the room, turned to his wife and told her, "You have got to die," that his wife laughed at him; whereupon he drew the razor, cut her throat and left the house.* An effort was made to strengthen defendant's plea by introducing evidence to show that deceased had threatened to take his life on different occasions prior to the killing.

He was indicted for murder at the March term, 1896, of the St. Louis Criminal Court and a plea of not guilty entered. On May 13 both parties announced ready, and a trial ended in a conviction of murder in the first degree. From the sentence upon said verdict he has appealed. For grounds in his motion for new trial defendant alleges: *First,* the verdict is against the evidence; *second,* the verdict is against the weight of the evidence and the law; *third,* incompetent, irrelevant and immaterial evidence was admitted by the court over objection of defendant's attorneys; *fourth,* the State was allowed to introduce evidence not in rebuttal after it had announced its case closed; *fifth,* new and important evidence has been discovered.

In the motion for arrest of judgment the following reasons are given: "*First,* the indictment does not properly charge an offense under the laws of this State; *second,* if the facts as charged were admitted they would not show defendant guilty of a crime or offense."

I. As the motion in arrest challenges the sufficiency of the indictment, we will first consider that objection. The indictment is in these words:

"The grand jurors of the State of Missouri, within and for the body of the city of St. Louis, now here in court, duly impaneled, sworn, and charged, upon their oath present; that Andrew Worton, late of the city of St. Louis aforesaid and State aforesaid, on the 5th day of March, in the year of our Lord, one thousand, eight hundred and ninety-six, at the city of St. Louis, with force and arms, in and upon one Louisa Worton, in the peace of the State, then and there being, feloniously, willfully, deliberately, premeditatedly and of his malice aforethought, did make an assault; and that the said Andrew Worton, with a certain knife the said Louisa Worton, in and upon the head and body of said Louisa Worton then and there feloniously willfully, deliberately, premeditately, and of his malice, aforethought did strike, cut, stab, and wound, giving to said Louisa Worton then and there feloniously, willfully, deliberately, premeditatedly, and of his malice aforethought, with the knife aforesaid, in and upon the head and body of the said Louisa Worton one mortal wound of the length of one inch and of the depth of five inches; of which the said mortal wound the said Louisa Worton then and there instantly did die.

"And so the grand jurors aforesaid, upon their oath aforesaid, do say that the said Andrew Worton the said Louisa Worton in the manner and form, and by the means aforesaid, feloniously, willfully, deliberately, premeditatedly, and of his malice aforethought did kill and murder, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State."

Every essential necessary to a good indictment for murder in the first degree is clearly and perspicuously stated in this indictment. Not a surplus word is used nor is any necessary allegation omitted. It conforms to the best precedents and must be commended for its

brevity. 1 Wharton's Prec. [4 Ed.], mar. page 155; Kelley's Crim. Law and Prac., sec. 474, page 309. The motion in arrest was properly overruled.

II.   No exceptions were saved to the giving or refusing of instructions and error in this regard is not made a ground for new trial, and hence can not be assigned in this court. *State v. Gilmore*, 110 Mo. 1; *State v. Johnson*, 115 Mo. 495. They are, however, full and complete, covering every phase of the case, and were all defendant could have asked. The court instructed on the law of self-defense.

III.   Every element of deliberation, premeditation and willful and malicious homicide is to be found in this short record. Out of his own mouth defendant is convicted of having deliberately planned the murder of his wife and the mother of his children. He armed himself with the deadly razor and began the day by repairing to her boarding house. He went immediately to her room and sent her daughter, who had slept with her mother, out on an errand. He then coolly informed his wife she must die. When the incredulous woman laughed at the threat, doubtless deeming it too monstrous to be at all probable, he says that he at once drew the razor and cut her throat. Over and over he detailed the incidents to the officers, the reporters, and the little daughter. His afterthought of self-defense was so clearly untrue that no jury could credit it for a moment against the mass of evidence which he had furnished to the contrary. The evidence is overwhelming that actuated by jealousy and his wife's refusal to longer live with him he deliberately compassed her death and with deadly promptness carried his design into execution. The verdict is in accord with the evidence and in obedience to the law.

IV.   There is no merit whatever in the objection to the ruling of the court in permitting the State to

call Mr. Edmonstone, the reporter of the *Star* newspaper. The defendant had not yet entered upon his evidence; had not even made his statement to the jury and it was clearly competent for the court to permit the State to call the witness at that time, notwithstanding the circuit attorney had by oversight announced the evidence on the part of the State closed. It was a matter within the discretion of the court and was wisely exercised.

V. There were some objections to the admission of evidence, but no grounds whatever were specified, and in all but one case no exceptions appear to have been saved to the rulings of the court. As to the principal ground, viz., that the court permitted an unlawful cross-examination of the defendant while on the stand, we find no error. The cross-examination was entirely legitimate and was confined to matters about which defendant had been interrogated by his own counsel.

VI. No sufficient showing was made to justify a new trial on the ground of newly discovered evidence. The rule on this subject is so well understood and has been adhered to so long that it is only necessary to say that no such diligence was shown as required the court to seriously consider it. Not a single requirement of the rule in this State was observed and the court most clearly can not be convicted of error in refusing it on that ground. *State v. Welsor*, 117 Mo. 570.

Without the aid of a brief or argument in behalf of the appellant we have gone through this whole record and we find no substantial error in it, and the judgment and sentence is affirmed. We therefore direct that the sentence of the law pronounced by the St. Louis Criminal Court be executed by the sheriff of the city of St. Louis. SHERWOOD and BURGESS, JJ., concur.