[No. 10,756.—In Bank.]
. October 5, 1882.

## THE PEOPLE *v.* CHARLES COOK.

ABDUCTION OF FEMALE CHILD—INSTRUCTION.—Upon the trial of an information for taking away a female under the age of eighteen years from her father, the Court instructed the jury to the effect that the father has by nature and by the law the legal charge of the persons of his children until they arrive at the age of majority, and that, if the defendant took the girl from such charge, for the purpose of prostitution, it was immaterial whether the defendant knew that she had a father living, and equally immaterial whether the act was done with or without her consent.

  *Held*: This was correct. When taken the girl was, in contemplation of law, in the charge of her father. (McKINSTRY and SHARPSTEIN, JJ., dissented.)

APPEAL from a judgment of conviction and from an order denying a new trial, in the Superior Court of the County of Sacramento. CLARK, J.

*James H. Budd* and *J. H. Budd*, for Appellant.

*A. L. Hart*, Attorney General, for Respondent.

MORRISON, C. J.:

The defendant was prosecuted by information, and convicted of violating Section 267 of the Penal Code, which reads as follows: "Every person who takes away any female under the age of eighteen years, from her father, mother, guardian, or other person having the legal charge of her person, without their consent, for the purpose of prostitution, is punishable by imprisonment in the State Prison, not exceeding five years, and a fine not exceeding one thousand dollars."

The evidence shows that one Rebecca Sproul, a female between sixteen and seventeen years of age, was placed by her father in the employ of one Coleman, in the City of Sacramento, and having remained in Coleman's service for about one week, she left there without the consent or even the knowledge of her father. She then went to different places in the city, and slept in several houses, leading a dissolute and immoral life, until she met the defendant, at the swimming baths in Sacramento. An improper intimacy at once commenced between the defendant and herself, and, at its beginning, he proposed that she should go into a house of prostitution, and support him out of the money made by her as an inmate of such a house. This arrangement was carried into effect, and the defendant took the girl, first, to a house of prostitution in Woodland, and afterwards to a house of the same character in Dixon.

The Court below instructed the jury to the effect that the father has by nature and by the law, the legal charge of the persons of his children until they arrive at the age of majority, and that if the defendant took Rebecca from said charge, for the purpose of prostitution, it was immaterial whether the defendant knew that she had a father living, and it was equally immaterial whether the act was done with or without her consent. This was correct. (*The Queen* v. *Biswell*, 2 Cox'r Cr. Cas. 279; *Reg.* v. *Olifier*, 10 id. 402.) When taken, the girl was in contemplation of law, in the charge of her father.

The statute was intended not only for the protection of females under a certain age from the wiles and machinations of bad men, but was also intended to protect the family from

sorrow and disgrace. We find in the charge of the Court to the jury no error, and are of opinion that the evidence was amply sufficient to support the verdict of the jury.

Judgment and order affirmed.

THORNTON, MYRICK, and MCKEE, JJ., concurred.

MCKINSTRY, J., dissenting:

I dissent. In my view the crime defined in Section 267 of the Penal Code is committed by one who "takes away" the infant from the actual charge or possession of her parent, guardian, or other person legally entitled to the charge of her person. (See 9 Geo. IV., c. 31, § 20.) It is not committed by one forming an immoral connection with a female who has already abandoned her home or fled from guardianship.

There are cases in which it has been held that the English statute was violated, where the infant was persuaded to leave her home, and while under the influence of such persuasion, and as a part of a continuous design joined the person to whose persuasion she had yielded, and went away with him for the purpose of prostitution. (*Reg.* v. *Frazer,* 8 Cox's Cr. Cas. 446; *Reg.* v. *Kipps,* 4 id. 167; *Reg.* v. *Manktelow,* 6 id. 143.) But there is no case where one has been convicted under the statute, who had no connection, by way of persuasion or otherwise, with the departure of the infant from her permanent or temporary home, or even any knowledge of an intended departure.

In *Queen* v. *Biswell,* cited in the prevailing opinion, it was held that a man who took an infant from her father's house might be convicted, although the proposition to go away together emanated from the girl. In *Reg.* v. *Olifier,* also cited in the prevailing opinion, it was held: "A man is not bound *to return to her father's custody* a girl who, without any inducement on his part, has left her home," etc.

In the case before us the female was not taken away from her father, or from Coleman, in whose employment she had been, or from any person having the legal charge of her. There is not the slightest pretense that the defendant induced her to leave the house of her father, or of Coleman, or that he ever saw her until she had, for a considerable period of

time, "been going about from place to place, sleeping in sev-
eral different houses, and leading a dissolute and immoral
life." However base and infamous the conduct of defendant,
he can only be punished, under this information, if he has
committed the crime described in Section 267 of the Penal
Code.

SHARPSTEIN, J., concurred.