[Crim. No. 1646. In Bank.—September 21, 1911.]

## THE PEOPLE, Respondent, v. TONY FLORES, Appellant.

CRIMINAL LAW—ABDUCTION OF FEMALE CHILD FOR PURPOSE OF PROSTITUTION;—TAKING AWAY FROM PARENT OR GUARDIAN.—Section 267 of the Penal Code, making it a crime to take away any female under the age of eighteen years from her father, mother, guardian, or other person having the legal charge of her person, without their consent, for the purpose of prostitution, has for its object the protection of young girls who, even if not virtuous, were not abandoned or beyond the hope of reform.

ID.—FEMALE TAKEN MUST HAVE BEEN IN CHARGE OF PARENT OR GUARDIAN.—No conviction can be had under that section, unless the girl, at the time of her alleged abduction, was in the actual charge of her father or mother, or other person described therein. In the present case, the evidence entirely fails to show that the girl in question was taken away from her mother, as charged in the information.

ID.—ENTERING INTO HOUSE OF ILL FAME—PREVIOUS CHASTE CHARACTER OF GIRL.—In order to sustain a conviction, under section 266 of the Penal Code, of enticing an unmarried female under the age of eighteen years, into a house of ill fame, for the purpose of prostitution, it is necessary that she should have been "of previous chaste character."

ID.—PLACING UNCHASTE AND ABANDONED GIRL IN HOUSE OF ILL FAME.— It is not a crime to aid in placing in a house of prostitution a female under the age of eighteen years, of unchaste character, and who has been abandoned, and is not in the legal charge of any one, but is a wanderer upon the town.

APPEAL from a judgment of the Superior Court of Alameda County and from an order refusing a new trial. Everett J. Brown, Judge.

The facts are stated in the opinion of the court.

James J. Van Hovenberg, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

THE COURT.—This appeal was submitted to the district court of appeal for the first appellate district and the justices thereof being unable to agree upon a judgment therein, the appeal, accompanied by the respective opinions of the justices of that court, has been transferred to this court for determination.

The opinion written by Justice Cooper, then presiding justice of said district court of appeal, and concurred in by his associate Justice Kerrigan, is as follows:—

"The defendant was accused by the information of the crime of abduction in having, on the 5th day of January, 1910, willfully and feloniously taken one Ruby Emerson, an unmarried female under the age of eighteen years 'from and out of the custody of Rose Emerson, the mother of the said Ruby Emerson, without the consent and against the will of the said Rose Emerson, who then and there had the legal charge of the said Ruby Emerson.' The jury returned a verdict of guilty, and defendant was thereupon sentenced to a term of five years in the state prison, being the maximum punishment prescribed by the statute.

"It appears from the evidence that the girl Ruby Emerson was, at the time of the alleged taking, about fifteen years of age. For some two years before she had been in the habit of frequently running away from home. She had been in charge of the juvenile court, and had afterwards been committed to an institution for the care of incorrigible girls, from which place she had run away. She had not been at the home of her father and mother since the latter part of November, 1909, some six or seven weeks prior to the alleged abduction. It appears from the girl's own testimony that during this time and for several

weeks she had been first at one rooming or lodging house in the city and county of San Francisco, and then at another, or in her own language, she 'roomed every place,' and could not herself remember the names of the various places in which she had roomed. She also went under different names, among them being 'Ruby Walker,' 'Helen Walker' and 'Helen Johnson.' It does not appear that during this time her father and mother had notified the public authorities or made any attempt to find her. She had apparently made her escape from the institution to which she had been legally committed, and had abandoned her home, wandering on the streets at night, meeting strange men and taking them to her room if she had one, and if not, finding one temporarily. She testified that on January 4, 1910, she could not tell where she was living because she did not know, but finally said that it was somewhere on Seventh Street in the city and county of San Francisco. She testified that about 7 o'clock on said last named evening she met defendant at the corner of Seventh and Market streets, and there had a conversation with him and his companion, one William Carlin—that defendant told her he could get her a place to work in Oakland, and she promised to meet defendant and his companion at the ferry building the next morning for the purpose of going over to Oakland to find her a place to work; that she did meet defendant and his companion the next morning and went with them across the bay to Oakland, stopping at Seventh Street and Broadway at the railroad depot; that they then went into a restaurant where defendant and Carlin had their breakfast, and from there to the station; that defendant and Carlin left her at the station while they went to see about getting her a place, and that they soon returned and informed her that she, in her own language, 'was hired,' and they told her to go down to 477 Sixth Street and see the 'lady,' and that she did go. She testified that defendant told her he would get her work as a chambermaid, but in the same sentence she said that he told her to give an assumed name, and to tell the landlady that she was twenty years old, as she could not get work as a chambermaid unless she was twenty. She accordingly gave an assumed name and stated to the landlady that her age was twenty. She does not appear to have made any inquiry as to chamber work, but dressed and went into the parlor with two other girls who were

inmates of the house doing the same kind of work. She remained there about four weeks, and had a room where she received and entertained the men who patronized her according to the custom of the house. It does not appear that defendant knew the age of the girl or that she had any father or mother living. He met her casually on the street, and offered to assist her to get regular employment in the line of business which she had chosen and evidently at more remunerative wages. He did not solicit her or inveigle her into a life of prostitution. His offered aid may have been, and probably was, in a spirit of kindness—if we can conceive of people in that business being kind to each other, the desire of both of them evidently being that she might have a fixed abode, where she could get more customers.

"The main contention of defendant's counsel is that the evidence is not sufficient to support the verdict in this, that it entirely fails to show that 'defendant took the girl away from her mother,' as charged in the information, and we are constrained to so hold.

"In discussing this statute we must bear in mind its object and purpose. The intention of the legislature evidently was to prevent young girls being lured away from the care and control of their parents or legal guardians for the purpose of leading immoral lives or being made prostitutes. It was for the purpose of protecting young girls who, if not virtuous, were not abandoned or beyond the hope of reform. It was never intended to apply to girls who had already abandoned their home, and who had already become common street-walkers or prostitutes. The section of the code upon which this prosecution is based reads as follows: 'Every person who takes away any female under the age of eighteen years from her father, mother, guardian or other person having the legal charge of her person, without their consent, for the purpose of prostitution, is punishable by imprisonment in the state prison not exceeding five years, and a fine not exceeding one thousand dollars.' The section makes it a crime to take away any female under the age of eighteen years from her father or mother or legal guardian, without their consent, for the purpose of prostitution, and this without reference to whether the girl is chaste or otherwise. If she is wayward or has lost her virtue the statute still contemplates that she shall not be

CLX Cal.—49

taken away from her father or mother, because their love and solicitude perchance may still reform her or bring her to see the error of her ways. No one has the right to take such young girl away from her father or mother without their consent. In the eyes of the law she is an infant, and no stranger had the right to deprive the father or mother of her custody. But if a girl is not in charge of her father or mother, or other person described in section 267, that section does not apply, but the case is governed by the preceding section, to wit, section 266, which reads as follows: 'Every person who inveigles or entices any unmarried female of previous chaste character, under the age of eighteen years, into any house of ill fame, or of assignation, or elsewhere, for the purpose of prostitution, or to have illicit carnal connection with any man; and every person who aids or assists in such inveiglement or enticement; and every person who, by any false pretenses, false representa-. tion, or other fraudulent means, procures any female to have illicit carnal connection with any man, is punishable by imprisonment in the state prison not exceeding five years, or by a fine not exceeding one thousand dollars, or by both such fine and imprisonment.' This section deals with unmarried females under the age of eighteen 'of previous chaste character,' who were not in the charge or custody of the father, mother or legal guardian. The defendant could not have been convicted under this section because the girl was not of previous chaste character, as evidently appears from her own testimony. Then where a female who has lost her virtue, under the age of eighteen, and who has been abandoned, or who is not in the legal charge of any one, but a wanderer upon the town, is aided in being placed in a house of prostitution, no crime has been committed. No one would say from the evidence in this record that the defendant took the girl from her mother. The words mean the removal or separation of the girl from the parent or legal guardian. If the girl was not with her mother or under the immediate control and custody of the mother, but living separate and apart from her, going from place to place of her own volition, not making her home with her mother, she was not 'taken from the mother.'

"The English statute (24 & 25 Victoria, c. 10, s. 55)' provides as follows: 'Whosoever shall unlawfully take or cause to be taken any unmarried girl, being under the age of sixteen

years, out of the possession and against the will of her father
or mother, or of any person having the lawful care or charge
of her, shall be guilty of a misdemeanor, and being convicted
thereof shall be liable, at the discretion of the court, to be
imprisoned for any term not exceeding two years, with or
without hard labor.' The decisions in England on this statute
are in accord with the construction herein given. It will be
observed that the statute is similar to ours except the age is
sixteen and the purpose need not be for prostitution. Instead
of the words 'takes away· from' the English statute uses the
words 'take or cause to be taken . . . out of the possession.'
In the case of *Reg.* v. *Primelt,* 1. F. & F. 50, which was a prose-
cution under this section, the evidence showed that the girl
was in the habit of going to dances and public houses, and was
out occasionally late at night without any one to look after her
and without her mother's supervision. The chief justice
directed the jury that 'if they thought that the mother had by
her consent countenanced her daughter in her lax course of
life by permitting her to go out alone at night and to dance
at public houses, this was not a case that came within the
intent of the statute, but was one where what had occurred,
though unknown to her, could not be held to have happened
against her will.'

"In *Reg.* v. *Mankletow,* Dears, C. C. 152 (Spring Assizes,
1855), it was said: 'Supposing the girl to have abandoned
her father's possession, and the prisoner then to take her
away, it would not come within the statute. But supposing
she conditionally abandoned the possession of her father under
the impression that the prisoner would be at a certain point to
take her away, that would not be a determination of the
father's possession.'

"It is said in Russell on Crime, International Edition, vol.
3 (note to p. 263), that upon the case of *R.* v. *Meadows,* [1
Car. & K. 399], being cited, Jarvis, C. J., observed, 'that the
girl, by voluntarily going from her. father's house, may have
severed the possession of the father, and so could not be said to
be taken out of the possession of her father.'

"The statute of New York is similar to ours, and uses the
words 'shall take away any female under the age of fourteen
years from her father, mother, guardian or other person hav-
ing the legal charge of her person.' In *People* v. *Parshall,* 6

Parker's Crim. Rep. (N. Y.) 129, in discussing the statute the court said: 'The remaining question is whether the second count in the indictment was sustained by evidence sufficient to be admitted to the jury. In considering this question we are confined to the testimony of the female Hannah Naughton, who was alleged to have been taken away, as the court below put the case to the jury solely upon her evidence, as applied to the second count. In my opinion the evidence of the girl fell short in several respects of being sufficient to produce a conviction under that count—and first, as to the taking away. The evidence of the girl does not show that she was taken away from any one according to her testimony. . . . And the testimony of the girl does not tend to show that there was any taking of her in the sense of the statute, which contemplates some positive act to get the female away from the person having the legal charge of her. Nothing of that kind appears.'

"In *People* v. *Powellson* (Cal.), 7 Pac. 35, the court said: 'The defendant was charged by indictment with taking from certain individuals having the legal charge of her person a female under the age of eighteen years for the purpose of prostitution, under section 267 of the Penal Code. There was no evidence that the infant was taken from the charge or custody of the persons named in the indictment. Judgment and order reversed, and cause remanded for a new trial.'

"The attorney-general relies upon *People* v. *Cook*, 61 Cal. 478, as supporting the contention that in contemplation of law a female under the age of eighteen is in charge of her father, and that the taking was sufficient even where the evidence shows that the girl had abandoned her home. The case does lend countenance to such contention, but an examination of it will show that the court in that case was discussing solely the question of a charge to the jury to the effect that 'the father has by nature and by the law the legal charge of the persons of his children until they arrive at the age of majority, and that if the defendant took Rebecca from said charge, for the purpose of prostitution, it was immaterial whether the defendant knew that she had a father living, and it was equally immaterial whether the act was done with or without her consent.' The instruction might very well apply to a case where the girl had not abandoned her home, or was not living a separate and independent existence; but it will be observed

that the court in the prevailing opinion does not discuss the question as to the sufficiency of the evidence. However, in a dissenting opinion written by Mr. Justice McKinstry, and concurred in by Mr. Justice Sharpstein, the learned justice said: 'I dissent. In my view the crime defined in section 267 of the Penal Code is committed by one who "takes away" the infant from the actual charge or possession of her parent, guardian, or other person legally entitled to the charge of her person. (See 9 Geo. IV, c. 31, sec. 20.) It is not committed by one forming an immoral connection with a female who has already abandoned her home or fled from guardianship. . . . In the case before us the female was not taken away from her father, or from Coleman, in whose employment she had been, or from any person having the legal charge of her. There is not the slightest pretense that the defendant induced her to leave the house of her father or of Coleman, or that he ever saw her until she had for a considerable period of time "been going about from place to place, sleeping in several different houses, and leading a dissolute and immoral life." However base and infamous the conduct of defendant, he can only be punished, under this information, if he has committed the crime described in section 267 of the Penal Code.'

"The case is not in point for another reason. Conceding that the father is the legal custodian of his minor child, the charge in this case is not a taking from the father but from the mother. The father is the legal custodian, and even that custody had been taken away in this case and placed in an institution, to which the girl had been committed by the judgment of a court of competent jurisdiction.

"In this case, while the conduct of the defendant is not to be commended, and his mode of life shows that he associates with the lower strata of society, still we cannot affirm the judgment unless the evidence shows that he has committed the crime charged in the information. We would not be justified in placing a construction upon this statute so as to hold the defendant simply because he has been guilty of conduct of which we do not approve.

"The judgment and order are reversed."

The controlling question upon this appeal—the sufficiency of the evidence to support the verdict—is fully and clearly discussed in the foregoing opinion. The views and conclusion

expressed therein upon that question are, we are satisfied, correct, and we adopt the foregoing opinion as the opinion of this court.

The judgment and order are reversed.

Justice Angellotti did not participate in this decision.