THE PEOPLE OF PUERTO RICO, Plaintiff and Appellant, *v.*
ÁNGEL LUIS PÉREZ PIMENTEL, Defendant and Appellee.

No. 15362.    Argued July 14, 1953.—Decided November 15, 1954.

*Juan B. Fernández Badillo, Acting Attorney General,* and *Jaime
Garcia Blanco, Special Fiscal of the Supreme Court,* for
appellant.    *Rafael F. Barbosa* for defendant and appellee.

## JUDGMENT

The order appealed from, which was rendered by the
San Juan Part of the Superior Court under date of June 5,
1952 in the above-entitled case, is hereby affirmed.

It was so decreed and ordered by the Court as witness the
signature of the Chief Justice.    Mr. Justice Belaval con-
curred in a separate opinion.    Mr. Justice Negrón Fernán-
dez dissented.    Mr. Justice Ortiz did not participate.

A. C. SNYDER,
*Chief Justice.*

Certify:

IGNACIO RIVERA,
*Secretary.*

Opinion of MR. JUSTICE BELAVAL.

In view of the Court's decision to affirm the order ap-
pealed from without an opinion, I wish to express separately
my reasons for concurring with the result.

This case prompts us to read once more "La Celestina"
by Fernando de Rojas.    The Prosecuting Attorney of the
former District Court of Puerto Rico, San Juan Section, filed
an information against Ángel Luis Pérez and Luz María
Gómez Rodríguez who, although living together as husband
and wife, led the aggrieved party, Luz María López Aris-
tud, to believe that they were merely brother and sister, and
in that belief she had sexual relations with Ángel Luis Pérez,
defendant-appellee herein, as a result of which she became

pregnant. The difficulty of the case lies in the fact that it is rather an unusual episode in the history of human relations. It concerns a concubine who connives with her man so that he may have sexual relations with another woman. It seems that the aggrieved party would have had no objection to having sexual relations with the defendant had he been single, although she had certain scruples about having them with a man who is single but also another woman's paramour.

The information is based on § 260 of the Penal Code of Puerto Rico, as amended by the Act of February 26, 1908, equivalent in part to § 266 of the Penal Code of California, which provides:

"Every person who inveigles or entices any unmarried female, of previous chaste character, under the age of twenty-one years, into any house of ill fame or of assignation, or elsewhere, for the purpose of prostitution, or to have illicit carnal connection with any man; and every person who aids or assists in such inveiglement or enticement; and every person who, by any false pretenses, false representation, or other fraudulent means, procures any female to have illicit carnal connection with any man, is punishable by imprisonment in the penitentiary not exceeding five years, or by imprisonment in jail not exceeding one year or by a fine not exceeding one thousand dollars, or by both such fine and imprisonment.

"*Any person who shall wilfully and lewdly commit any lewd or lascivious act, other than the acts constituting other crimes provided for in the Penal Code, upon or with the body, or any part or member thereof, of a child under the age of fourteen years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or such child, shall be guilty of a felony and shall be imprisoned in the penitentiary not to exceed five years.*" The italicized portion of the text is the portion amended by the Act of February 26, 1908, and in turn constitutes the difference between the California and the Puerto Rican sections.

The defendants filed a demurrer in the court of first instance alleging that the facts set forth in the information did not constitute a public offense. The court, through Judge

Ángel M. Umpierre, sustained the demurrer as to defendant Ángel Luis Pérez and overruled the same as to defendant Luz María Gómez Rodríguez. The People of Puerto Rico appealed from the order sustaining the demurrer as to defendant Ángel Luis Pérez, assigning as the only error the trial judge's holding "that the information does not state facts constituting a public offense against defendant Ángel Luis Pérez...the person who had sexual relations with the aggrieved party, Luz María López Aristud, wherefore he was not covered by the statute."

The false pretenses, false representations, or fraudulent means consisted, according to the information, in the fact that the defendants, although living as husband and wife, *led* the aggrieved party *to believe* that they were brother and sister, as a result of which false pretenses, false representations, or fraudulent means they procured Luz María López Aristud to have illicit carnal connection with the defendant. It is the Prosecuting Attorney's opinion that such conduct is punishable under the following provision of § 260: "...and every person who, by any false pretenses, false representation, or other fraudulent means, procures any female to have illicit carnal connection with any man."

The purpose of § 260 is to avoid the prostitution of unmarried females under 21 years of age. We agree with the Prosecuting Attorney that § 260, as amended, comprises three aspects of the crime: (1) to enveigle or entice any unmarried female, under the age of 21 years, of previous chaste character, into any house of ill fame for the purpose of prostitution, or elsewhere to have illicit carnal connection with any male; (2) to procure any female, by false pretenses, false representations, or other fraudulent means, to have illicit carnal connections with any male; (3) to commit any lewd or lascivious act, other than the acts provided in the Penal Code, upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arous-

ing, appealing to, or gratifying the lust or passions or sexual desires of such person or such child. We disagree, however, that the first two aspects refer to two different groups of persons.

The first aspect of the offense is well defined in the Code; therefore, in addition to the enticement or artifice there must be evidence that the aggrieved party is an unmarried female, (2) under 21 years of age, (3) of previous chaste character, (4) who entered into a house of ill fame or some other secret or private place, ordinarily devoted to prostitution by virtue of defendant's insidious machinations, (5) to have illicit carnal connection with a male. The second aspect is not clearly defined in the Code, for the dispositive part merely provides: "procures any female to have illicit carnal connection with any man," and it seems that the crime is completed, (1) whether the person involved be single or married, (2) of legal or under age, (3) whether or not of previous chaste character, (4) who frequents any place for the purpose of having illicit carnal connection, (5) with any man. It is likely that the lawmaker relied on the general designation of the crime: "Enticing unmarried females under age for purposes of prostitution." Perhaps the lawmaker, making use of the purely grammatical description which says, "procures any female to have illicit carnal connection with any man," relied on the unexpressed opinion which such enumerative recital might contain, believing that it was sufficient to imply that the second aspect also refers to unmarried females, under age, of previous chaste character.

We might attempt to give an explanation by examining the historical content of the institution. According to Act 43 *De ritu impliarum* of the Digest, which provides "Lenocinium facere non minus est quam corpore quaestum exercere," a distinction was made between prostitution (rameras) and pandering (lenones). Act 17, title IV, book III of the *Fuero Juzgo*, does not establish any distinction between persons of

legal and under age, unmarried or married female, or a public or secret woman. The father who profited by his daughter's sexual industry, as well as the master who profited by the promiscuous slave, and the judge who was remiss in requisitioning public women, was whipped. Act 1, title XXII of Partida Seventh, recognizes five classes of pimps: (1) the infamous who keep whores publicly engaged in whoredom, keeping for themselves a share of their earnings; (2) those procurers who enveigle females whom they keep at their homes for the males for whatever reward they may receive; (3) the males who keep in their house female slaves or unmarried females and cause them to prostitute their bodies for money; (4) the vile male who pimps for his wife; (5) one who permits a married woman or other woman of good standing to fornicate in his house for a reward, although not acting as a broker for them. The definition of pander (*alcahuete*) is clear according to that text: *"Leno*, in Latin, means, in common parlance, a pander"*. We also notice that, with respect to the very ancient practice, no distinction is made between a public prostitute and a loose woman, between unmarried and married females, or between slaves and free females. *Enciclopedia Jurídica Española* (ed. by Francisco Seíx of Barcelona, 1910), vol. II, p. 507. However, in England the amendment to the Criminal Law of 1885 prescribed the offense of procuring where the woman involved is not a "common prostitute or of known immoral character," and, as to age, the offense is a felony if the girl is under the age of 13 years, and as a misdemeanor if the girl exceeds 13 years. *The Laws of England* by the Earl of Halsbury (ed. by Butterworth & Co. of London, 1909), vol. IX, p. 614, see also for subsequent amendments, more on the procedural than on the substantive aspect: Halsbury's *Laws of England* by Viscount Hailsham (ed. by Butterworth & Co. of London, 1933, vol. 9, p. 480). The Penal Code of Spain of 1822 has already established a distinction between young people of either sex, under 20 years of age (§ 536), and those of legal

age, making punishable the prostitution of females and males under 20 years of age, but not in the case of males and females over that age. The Spanish Penal Code of 1850 made the distinction between persons of legal age, namely, over 23 years, and those under age (§ 367).

In drafting, in 1872, § 266 of the Penal Code of California, the two logical sources of inspiration on which the California lawmaker could have relied were the English and the Spanish. Evidently, the provision then existing in England was the Victorian statute—24 and 25 Victoria, c. 10, §55—which is similar to § 267 of California, making it a crime for any person to take away any unmarried female, under the age of 16 years, from her father or guardian, for the purpose of prostituting or corrupting her, or without such purpose. *People* v. *Flores*, 118 Pac. 246, 247 (Cooper, 1911). It was not until 1885 that the offense of procuration under consideration was made a misdemeanor. 18 Encyclopedia Britannica 599 (ed. by the University of Chicago, 1948). There is no question that if the source of inspiration was the English law, the purpose was to prevent females under age from being corrupted. By the time the California Code was adopted, procuration had been made a crime in Spain by the Penal Code of 1822, in order to protect minors of both sexes under 20 years of age, although among them, though tentatively, was incidentally included the married female (§ 676). The same provision existed in the Penal Code of 1850, but for the purpose of protecting minors under 23 years of age. As stated in the *Enciclopedia Jurídica Española,* vol. and ed. cited, pp. 507–508: "Our ancient laws define this word (pander) in its legal sense, enumerate the different types of panders, and prescribe severe penalties; but all of them have been repealed by the Penal Code *which does not punish mere pandering or procuration,* except where it promotes or facilitates the corruption of minors habitually or in abuse of superiority or confidence." Thus, if the source

of inspiration was the Spanish law, the purpose was to prevent the prostitution of females under age.

It is well to note also that after § 266 was amended in 1905 (§§ 266(a), 266(b), 266(c), 266(d), 266(e), 266(f), and 266(g) of the Penal Code of California—Deering's California Codes, —Penal—pp. 72–74, ed. by Bancroft Whitney Company, 1949)—the prostitution of minors is carefully separated from that of adults, for the new § 266(a) again makes it a crime for any person to take any adult female for the purpose of prostitution, and § 266(d) penalizes every person who procures any adult female to cohabit with any male for money.

As to the California authorities on § 266, the first case— *People* v. *Roderigas*, 49 Cal. 9, 11 (Wallace, 1874), clarified two important aspects of the question: (1) that the offense prescribed was that of procuration or pandering, both under the first and the second provision; "Nor do we think that it can be supported under the last clause of the Act referred to. The facts stated in the indictment in this respect (even assuming Carlota López to have been of previous chaste character), amount to a charge of seduction, and do not import a crime under that clause. To 'procure a female to have illicit carnal connection with any man,' is the offense of a procurer or procuress—of a pander. This is the natural meaning of the words—the fair import of the terms of the statute—and, in our opinion, this construction effects the objects had in view by the lawmakers in its enactment. The argument for the people is that, as a seducer is a person who prevails upon a female—theretofore chaste—to have illicit carnal connection with himself, he is thereby brought within the mere words of the statute, and so made liable to the punishment it inflicts. But we think that this view cannot be maintained by any rule of fair interpretation. The statute uses the word procure—'procures.' The recognized meaning of this word, in the connection in which it appears in the statute, refers to the act of a person 'who procures

the gratification of the passion of lewdness for another.' This is its distinctive signification, as uniformly understood and applied. The subsequent words 'with any man' (procures any female to have illicit carnal connection with any man'), therefore, so far from being inconsistent with this construction, lend it support"; and (2) "the prosecution must prove that such female was of previous chaste character." There was always doubt as to whether the female's chastity was an indispensable requisite where the second feature of § 266 was involved. In the second case dealing with § 266—*People* v. *Flores, supra,* 247 (*per curiam,* although citing in its entirety the opinion rendered by Judge Cooper, 1911), the holding seems to be that both the minority and the chastity of the female must be established by the evidence under any of the features of § 266.

As to the responsibility of a male in lying with a woman enticed into prostitution, whether within or without a public or private house of prostitution, the *Roderigas* case was taken as a precedent in our first decision on the matter—*People* v. *Maldonado,* 32 P.R.R. 324 (Del Toro, 1923), at p. 326 of which we said:

"The crimes comprised in the first part of section 260 of the Penal Code, which alone is pertinent, are those committed not by the person who directly performs the carnal act, but by those depraved beings who engage in the corruption of women so that other men may satisfy upon them their lascivious appetites.

"Even supposing that there was a previous agreement between the defendant and Paula Hernández, the latter and not the defendant would be the culprit, independently of the crime perpetrated by the defendant, in the offense defined and penalized by said section 260. In the case of *People* v. *Roderigas,* 49 Cal. 9, the Supreme Court of that state held as follows:

'To procure a female to have illicit carnal connection with any man is the offense of a procurer or procuress—of a pander. The word "procures," as used in the statute, refers to the act of a person who procures the gratification of the passion of lewdness for another . . .' "

. . The prosecuting attorney urges the Court to reverse the case and substitute the judgment. Upon examination, we conclude that the case was rightly decided in its inception, and, instead of reversing, we uphold it, not only for the reasons then adduced but for the new one now adduced. There is no question that the offense punishable under § 260 of our Penal Code is the prostitution of unmarried females, under 21 years of age. Perhaps we might find in the title of the section traces of the clerical hand not conclusive of the intent of the legislature, as noted by Crawford on *Statutory Construction*, § 207, p. 360 (ed. by Thomas Law Book Co., 1940). However, the language of the first part of the text is clear in that, according to the original wording of the section, the legislative intent was to make it a crime to pander for unmarried females under 21 years of age, of previous chaste character, and that the first two features originally contained in the section refer to the different ways of procuring prostitution or illicit corruption, either by public prostitution or private solicitation, rather than to different groups of persons. The subsequent inclusion of children in the same section by the 1908 amendment is also indicative of the legislative intent to include therein offenses against minors.

Hence, no offense is committed by a male who has carnal connection with a female procured by a pander or solicitor unless she is under 14 years of age, in which case he is guilty of statutory rape or corruption of minors, depending on the lewd or lascivious act committed upon the minor. In Puerto Rico fornication by itself is not an offense unless it is coupled with physical violence (rape), presumptive physical violence even if there is consent (rape of a child under 14 years of age), promise of marriage (seduction), adultery, venereal contagion, or corruption of minors, all of which offenses are punishable under other sections of the Code and other provisions of the penal laws not incorporated in the Code. Any male who has illicit carnal intercourse with a female pro-

cured by a pimp or solicitor may be prosecuted under any of said sections or provisions, if warranted by the facts.

Regarding § 260 which contemplates a relation other than that of the sexual couple, the offense is committed by any person who enveigles any unmarried female under 21 years of age, of previous chaste character, to have illicit carnal connection with any man either for the purpose of prostitution or occasional amusement. Such offense is against decorum and good morals and not against the person. The law presupposes that an adult woman has enough sense to distinguish between good and evil, and that when she surrenders herself to a male she is fully conscious of the danger involved in the sexual act to her good morals as well as to her health. The law also presupposes that a married woman, even if she is under 21 years of age, has sufficient experience to make a like discernment. The law presupposes that as long as a female is under the custody of her parents or tutor she remains a virgin, and it imposes on the parents the duty to exercise the vigilance and care necessary to preserve her virtue. The California authorities, *supra*, have been reluctant to punish pimps or agents of bawdyhouses where the evidence shows that the female who is induced to habitual prostitution had left her home and had carnal experience with other males. Therefore, in order to prove that the offense of pandering has been committed under the first as well as under the second provision of § 260 of the Penal Code of Puerto Rico, it must be alleged and established by the evidence that the female induced to public or occasional prostitution is under 21 years of age, unmarried, and of previous chaste character.

The order appealed from will be affirmed.