EL PUEBLO DE PUERTO RICO, demandante y apelante, *v.* ÁNGEL LUIS PÉREZ PIMENTEL, acusado y apelado.

Número 15362.

*Sometido:* 14 de julio de 1953. *Resuelto:* 15 de noviembre de 1954.

*Hon. Secretario de Justicia Interino Juan B. Fernández Badillo, y Jaime García Blanco, Fiscal Especial, Tribunal Supremo,* abogados de El Pueblo, apelante; *Rafael F. Barbosa,* abogado del acusado y apelado.

### Sentencia

Se confirma la resolución apelada que dictó el Tribunal Superior de Puerto Rico, Sala de San Juan, con fecha 5 de junio de 1952 en el caso de epígrafe.

Así lo pronunció y manda el Tribunal y firma el Sr. Juez Presidente. El Juez Asociado Sr. Belaval concurrió en opi-

nión propia. El Juez Asociado Sr. Negrón Fernández disintió. El Juez Asociado Sr. Ortiz no intervino.

A. C. SNYDER,
*Juez Presidente*

Certifico:

IGNACIO RIVERA
*Secretario*

Opinión del Juez Asociado señor Belaval.

Habiendo decidido el Tribunal confirmar la resolución apelada sin expresar opinión, quiero exponer por separado, las razones que tengo para concurrir con el resultado.

Se trata de un caso que pretende incitarnos a releer "La Celestina" de Fernando de Rojas. El señor Fiscal del anterior Tribunal de Distrito de Puerto Rico, Sección de San Juan, presentó una acusación contra don Ángel Luis Pérez y doña Luz María Gómez Rodríguez, porque viviendo juntos como marido y mujer, le hicieron creer a la perjudicada doña Luz María López Aristud que sólo eran hermanos, por lo cual dicha perjudicada tuvo relaciones sexuales con el acusado y apelado señor Ángel Luis Pérez, de cuyas relaciones sexuales quedó embarazada la perjudicada. La dificultad del caso es lo inusitado que resulta en la historia de las relaciones humanas. Se trata de una concubina que se confabula con su hombre, para que éste pueda tener relaciones sexuales con otra mujer. Parece que la perjudicada no hubiera tenido inconveniente en tener relaciones sexuales con el acusado si éste hubiera resultado soltero, aunque siente cierto escrúpulo, en haberlas tenido con un hombre que resulta soltero también, pero concubino de otra mujer.

La acusación presentada se basa en el art. 260 del Código Penal de Puerto Rico, según quedó enmendado por la Ley de 26 de febrero de 1908 (pág. 57), equivalente en parte al art. 266 del Código Penal de California, que dispone:

"Toda persona que por medio de amaños indujere o engañare a un mujer soltera, de menos de veinte y un años de

edad, reputada hasta entonces por pura, a entrar en alguna casa de lenocinio, o en cualquiera otra parte, con objeto de prostituirla, o de que tenga contacto carnal ilícito con cualquier hombre, o que ayudare o cooperare a tal seducción *o engaño;* o que valiéndose de ardides, engaños u otros medios fraudulentos, consiguiere que una mujer tenga comercio carnal ilícito con cualquier hombre, incurrirá en pena de presidio por un término máximo de cinco (5) años, o de cárcel por un término máximo de un (1) año o de multa máxima de mil (1,000) dólares, o de ambas penas.

*"Toda persona que maliciosamente cometiere cualquier acto impúdico o lascivo, fuera de los que constituyeren otros delitos previstos en el Código Penal, con un niño menor de catorce años de edad, o con el cuerpo de dicho niño o cualquiera parte o miembro del mismo, con la intención de despertar, incitar o satisfacer la impudicia, pasiones o deseos sexuales de dicha persona o de dicho niño, será culpable de delito grave (felony) y recluído en la penitenciaría por un período que no excederá de cinco años."* La parte del texto subrayada fué la enmendada por la Ley de 26 de febrero de 1908, y a su vez representa la diferencia que existe entre el artículo de California y el de Puerto Rico.

Los acusados y apelados formularon en el tribunal de primera instancia una excepción perentoria, alegando que los hechos expuestos en la acusación no constituían delito público y dicho tribunal, por voz de su ilustrado Juez Ángel M. Umpierre, declaró con lugar la excepción en cuanto al acusado señor Ángel Luis Pérez, y sin lugar en cuanto a la acusada señora Luz María Gómez Rodríguez. De la resolución declarando con lugar la excepción perentoria en cuanto al acusado señor Ángel Luis Pérez, apela El Pueblo de Puerto Rico, y señala como único error haber resuelto el ilustrado Juez sentenciador "que la acusación no imputa hechos constitutivos de delito público contra el acusado Ángel Luis Pérez . . . . por ser éste quien sostuvo actos carnales con la perjudicada Luz María López Aristud, quedando así fuera del estatuto."

El ardid, engaño o medio fraudulento consistió, según alega la acusación, que los acusados aunque mantenían relaciones como de marido y mujer, *le hicieron creer* a la perjudicada que eran hermanos entre sí, en virtud de cuyo ardid, engaño o medio fraudulento, consiguieron que Luz María López Aristud tuviera comercio carnal ilícito con el acusado. Entiende el señor Fiscal que tal conducta puede ser castigada de acuerdo con la siguiente disposición del art. 260: "o que valiéndose de ardides, engaños u otros medios fraudulentos, consiguiere que una mujer tenga comercio carnal ilícito con cualquier hombre."

Lo que persigue el art. 260 es evitar la prostitución de mujeres solteras menores de 21 años. Estamos conformes con el señor Fiscal que tal y como quedó enmendado el art. 260 comprende tres modalidades del delito: (1) inducir o engañar a una mujer soltera, de menos de veintiún años de edad, reputada hasta entonces por pura, a entrar en alguna casa de lenocinio con el objeto de prostituirla, o entrar en cualquiera otra parte para que tenga comercio carnal ilícito con un hombre; (2) conseguir valiéndose de ardides, engaños u otros medios fraudulentos que cualquiera mujer tenga comercio carnal ilícito con cualquier hombre; (3) cometer cualquier acto impúdico o lascivo con un niño menor de catorce años, fuera de los previstos en el Código Penal, o con el cuerpo de dicho niño o cualquier parte o miembro de éste, con la intención de despertar, incitar o satisfacer la impudicia, pasiones, o deseos sexuales de la persona o del propio niño. En lo que no estamos conformes es, que las dos primeras modalidades se refieran a dos grupos de personas distintas.

La primera modalidad del delito está bastante definida por el Código y, por lo tanto, además del engaño o artificio debe quedar establecido por la prueba, que la perjudicada resulta ser una mujer soltera, (2) menor de veinte y un años, (3) reputada hasta entonces por pura (4) que ingresó en una casa de prostitución, o a cualquier otro sitio secreto o privado, pero dedicado ordinariamente a la prostitución en virtud de las ma-

quinaciones insidiosas del acusado, (5) para tener contacto carnal ilícito con un hombre. La segunda modalidad no está claramente definida por el Código pues la parte dispositiva sencillamente dice: "Consiguiere que una mujer tenga comercio carnal ilícito con cualquier hombre", y tal parece que el delito queda consumado, (1) aunque se trate de una persona soltera o casada, (2) mayor o menor de edad, (3) esté o no esté reputada hasta entonces por pura, (4) que vaya a cualquier sitio para tener comercio carnal ilícito, (5) con cualquier hombre. Puede ser que el legislador haya descansado en la clasificación general del delito: "prostitución de mujeres solteras menores de veinte y un años". Puede ser que el legislador haciendo uso de la pura relación gramatical, al decir "consiguiere que una mujer tenga comercio carnal ilícito con cualquier hombre" descansara en el juicio inexpresado que dicha relación enumerativa contuviere, creyéndolo suficiente para que se sobreentienda que la segunda modalidad, también se refiere a mujeres solteras, menores de edad, hasta entonces reputadas por puras.

La explicación podría intentarse examinando el contenido histórico de la institución. De acuerdo con la Ley 43 *De ritu impliarum* del Digesto: "lenocinium facere non minus est quam corpore quaestum exercere", demuestra que ya se distinguía la prostitución (rameras) de la alcahuetería (lenones). De la Ley 17, título IV, libro III del Fuero Juzgo no se desprende ninguna distinción entre mayores o menores, mujer doncella o casada, o mujer pública o secreta. Tanto el padre que se lucraba de la industria sexual de la hija, como el señor que se lucraba de la esclava promiscua, como el Juez remiso en requisar las mujeres públicas, eran azotados. La Ley 1ª título XXII de la Partida 7ª reconoce cinco clases de alcahuetes: (1) los bellacos malos que guardan las putas, que están públicamente en la putería tomando su parte de lo que ellas ganan; (2) los que andan por trujamanes alcohotando las mujeres que están en sus casas para los varones por algo que dellos reciben; (3) los omes que tienen en sus

casas captivas o mosas a sabiendas para fazer maldad de sus cuerpos, tomando dellas lo que assi ganaren; (4) el ome vil que alcahueta a su muger; (5) el que consiente que alguna muger casada, u otra de buen lugar faga fornicio en su casa, por algo que le den, maguer non ande por trujuam entre ellos. La definición del alcahuete es clara de acuerdo con el mismo texto: "lenon en latín tanto quiere dezir en romanze como alcahuete." También aquí vemos que con relación al antiquísimo ejercicio, no se hace distinción entre la prostituta pública y la mujer ocasional, entre las doncellas y las casadas o entre las esclavas y las mujeres de condición libre: 2 Enciclopedia Jurídica Española 507 (Ed. de Francisco Seix de Barcelona), (1910). Sin embargo, en Inglaterra, cuando se adopta la enmienda a la Ley Criminal de 1885, se proscribe el delito de solicitación (*procuring*) cuando no se trate de una "prostituta pública o mujer que tuviere un carácter inmoral conocido" y en cuanto a la edad, se califica como *felony* si la mujer resulta menor de trece años y se califica como *misdemeanor* si la mujer resulta mayor de trece años de edad: *IX The Laws of England*—Earl of Halsbury, 614, (Ed. de Butterworth & Co. de Londres (1909); véase también para enmiendas posteriores, más sobre el procedimiento que sobre el aspecto sustantivo: 9 Halsbury's *Laws of England*—Viscount Hailsham, 480 (Ed. de Butterworth & Co. de Londres (1933). El Código Penal de 1822 de España, establecía ya una distinción entre los jóvenes de uno u otro sexo, menores de veinte años cumplidos (art. 536) y los que eran mayores de edad siendo punible la correduría de la prostitución cuando se ejercitaba cerca de hombres y mujeres menores de veinte años, y no siéndolo cuando se ejercitaba cerca de hombres y mujeres mayores de veinte años. El Código Penal de 1850 de España, la establecía entre mayores de edad, o sea, mayores de veintitrés años y los menores de edad, (art. 367).

Cuando se redacta el art. 266 del Código Penal de California en el 1872, las dos fuentes lógicas en que hubiera podido inspirarse el legislador californiano eran la inglesa o la

española. Aparentemente lo que existía en esa fecha en Inglaterra era la disposición del estatuto victoriano—24 & 25 Victoria C. 10 Sección 55—, parecida al art. 267 de California que castigaba a todo aquel que sacara a cualquiera mujer soltera, menor de dieciséis años de la custodia paterna o tutelar, bien con propósito de prostituirla o corromperla o sin tal propósito: *People* v. *Flores*, 118 Pac. 246, (Cooper), (1911), cita precisa a la pág. 247. No es hasta el 1885 que se declara como punible el delito de celestinaje que estamos estudiando: 18 Enciclopedia Británica 599, (Ed. de la Universidad de Chicago), (1948). Es indudable que si la fuente de inspiración fué la inglesa lo que se tuvo en mente fué evitar la corrupción de las mujeres menores de edad. En España, ya para la fecha en que se adopta el Código Californiano, se había hecho punible por el Código Penal del 1822 la correduría de la prostitución, (alcahuetería), para proteger a los menores de veinte años de ambos sexos, aunque entre ellos, aunque en grado de tentativa, aparece incluída accidentalmente la mujer casada, (art. 676). En el Código Penal de 1850 existía la misma disposición, pero para proteger a los menores de veinte y tres años. Como bien nos advierte, la Enciclopedia Jurídica Española, tomo y edición citados, a las págs. 507 y 508: "nuestras antiguas leyes definen el sentido legal de esta palabra", (alcahuete) "enumeran las diferentes clases de alchahuetes y establecen contra ellos severísimas penas; pero todas han quedado derogadas por el Código Penal *que no castiga el lenocinio o alcahuetería simple* sino en casos en que se promueve o facilita la corrupción de menores habitualmente o con abuso de superioridad o confianza." De manera pues, que si la fuente de inspiración fué la española, lo que se tuvo en mente fué evitar la corrupción de las mujeres menores de edad.

Bien es de notarse asimismo, que después de la reforma que sufre el art. 266 en el 1905, (art. 266 (*a*), 266 (*b*), 266 (*c*), 266 (*d*), 266 (*e*), 266 (*f*), y 266 (*g*) del Código Penal de California—Deering's California Codes—Penal—págs. 72–74

(Ed. de Bancroft Whitney Company), (1949), se separa cautelosamente la prostitución de los menores de edad de la prostitución adulta, pues el nuevo art. 266 (*a*) vuelve a penalizar a todo aquel que indujere a una mujer adulta a la prostitución y el art. 266 (*d*) penaliza a todo aquel que consiguiere, mediante dinero, que una mujer adulta cohabite con cualquier hombre.

En cuanto a la jurisprudencia de California sobre el art. 266, el primer caso—*People* v. *Roderigas*, 49 Cal. 9 (Wallace), (1874) cita precisa a la pág. 11—dejó esclarecido dos aspectos importantes de la cuestión: (1) que el delito proscrito era el de alcahuetería o celestinaje (*pander*), tanto bajo la primera disposición como bajo la segunda: "tampoco creemos que pueda sostenerse bajo la última disposición de la ley antes mencionada; los hechos aducidos en la acusación a este respecto (aún asumiendo que Carlota López hubiere sido reputada por casta), imputan la comisión de un delito de seducción, y no un delito bajo este artículo; 'conseguir que una mujer tenga comercio carnal ilícito con cualquier hombre', es la ofensa cometida por el alcahuete o la alcahueta o por una celestina; ésta es la acepción corriente de las palabras, el significado justo del lenguaje del estatuto; y, en nuestra opinión, esta interpretación cumple el fin que tuvieron en mente los legisladores al decretarla; la contención del Pueblo es que como un seductor es una persona que convence a una mujer, hasta entonces casta, a tener contacto carnal ilícito con él, él está por lo tanto incluído dentro de las escuetas palabras del estatuto, y por ello sujeto al castigo que conlleva; pero nosotros creemos que este punto de vista no puede prevalecer bajo ninguna regla de interpretación equitativa; el estatuto utiliza la palabra conseguir, 'consiguiere'; el significado reconocido de esta palabra, en el concepto en que aparece en la ley, se refiere a la obra de una persona 'que procura satisfacer la lujuria de otro'. Este es el significado característico, como es entendido y aplicado uniformemente; las palabras subsiguientes 'con cualquier hombre' ('consi-

guiere que una mujer tenga comercio carnal ilícito con cualquier hombre'), y por tanto, en vez de ser inconsistentes con esta interpretación ayudan a sostenerla"; y (2) "que debía probarse el hecho, que hasta el momento de perpetrarse el delito, la perjudicada gozaba de la reputación de ser casta." Siempre hubo la duda de si la condición de castidad de la mujer era requisito indispensable cuando se trataba de la segunda modalidad del art. 266. En el segundo caso sobre el art. 266, —*People* v. *Flores*, 118 Pac. 246 (*per curiam*, aunque citando en su totalidad, la opinión rendida por el Juez sentenciador Cooper), (1911), cita precisa a la pág. 247, parece resolverse que tanto la minoridad como la condición de castidad de la mujer debía quedar establecida por la prueba bajo cualesquiera de las modalidades del art. 266.

En cuanto a la responsabilidad del hombre que yace con la mujer inducida a la prostitución, bien sea dentro de una casa de prostitución pública o privada, o fuera de ella, el caso de *Roderigas* se tomó como antecedente para nuestra primera decisión sobre el particular: —*Pueblo* v. *Maldonado*, 32 D.P.R. 349, (Del Toro), (1923), cita precisa a la pág. 352 donde expusimos:

"Los delitos que comprende el párrafo primero del artículo 260, que es el único pertinente, son los cometidos no por la persona que directamente realiza el acto carnal, sino por aquellos seres depravados que se dedican a corromper mujeres para que otros hombres satisfagan en ellas sus apetitos lascivos; aun cuando se partiera de la base de un previo acuerdo entre el acusado y Paula Hernández, ésta y no el acusado, sería la culpable, independientemente del delito perpetrado por el acusado, de la ofensa prevista y castigada en el artículo 260; en el caso de *El Pueblo* v. *Roderigas*, supra, la Corte Suprema de dicho estado decidió: 'el conseguir a una mujer para que tenga contacto carnal ilícito con cualquier hombre es el delito de un alcahuete o una celestina; la palabra "consiguiere" tal como está usada en el estatuto, se re-

fiere al acto de una persona que consigue para otra la satisfacción de una pasión lasciva" . . . .

El señor Fiscal nos solicita que revoquemos el caso para afirmar lo contrario. El estudio que hemos realizado nos convence que el caso estuvo originalmente bien resuelto, y en vez de revocarlo, lo sostenemos, no sólo por las razones aducidas en aquel entonces, sino por las nuevas razones aducidas hoy. Es indudable que el art. 260 de nuestro Código Penal lo que castiga es la prostitución de mujeres solteras, menores de veinte y un años. Tal vez en el título de la sección podamos encontrar la huella de la mano clerical que no refleje la intención legislativa, como nos advierte: Crawford *on Statutory Construction*, pág. 360, sec. 207, (ed. de Thomas Law Book Company) de (1940). Pero la redacción del comienzo del propio texto es claro, en cuanto a que, como estuvo originalmente redactado el artículo, la intención legislativa fué castigar el celestinaje cerca de mujeres solteras, menores de veinte y un años, hasta entonces reputadas por puras, y que las dos primeras modalidades originalmente comprendidas por el artículo, se refieren mejor a las distintas maneras de conseguir la prostitución o la corrupción ilícita, bien sea a través de la prostitución pública o de la solicitación privada, que a distintos grupos de personas. La inclusión posterior de niños en el mismo artículo, mediante la enmienda que sufre el artículo en el 1908, también indica la intención legislativa de considerar comprendidos en este artículo delitos contra la persona de los menores de edad.

No comete, pues, delito el hombre que tiene comercio carnal con mujer conseguida por alcahueta o solicitadora, a menos que no resulte menor de catorce años de edad, en cuyo caso puede ser directamente responsable de violación técnica o de corrupción de menores, dependiendo del acto impúdico o lascivo realizado con el menor. En Puerto Rico la fornicación, por sí misma, no es un delito, a menos que no medie violencia física, (violación), (rapto), violencia física presunta

aunque medie consentimiento, (violación de niña menor de catorce años), engaño matrimonial (seducción), adulterio, contagio venéreo o corrupción de menores, delito todos castigados por otros artículos del Código, y otras disposiciones de las leyes penales no incorporadas al Código. Cualquier hombre que tuviere comercio carnal ilícito con una mujer, conseguida por alcahueta o solicitadora, puede ser perseguido por cualesquiera de dichos artículos o disposiciones, si los hechos así lo justificaren.

En cuanto al art. 260, que contempla otra relación que no es la de la pareja sexual, el delito se comete por cualquiera persona que indujere a una mujer menor de veinte y un años, soltera, hasta entonces reputada por pura, a tener comercio carnal ilícito con cualquier hombre, bien para convertirla en una prostituta pública o en una entretenida ocasional. Se trata de un delito contra la honestidad y las buenas costumbres y no de un delito contra la persona. La ley presume que la mujer mayor de edad posee ya suficiente juicio para poder discernir entre el bien y el mal, y que cuando se entrega a un hombre lo hace con absoluta conciencia del riesgo que representa el acto sexual, tanto para su moral como para su salud. La ley presume asimismo, que una mujer casada, aunque sea menor de veintiún años, tiene suficiente experiencia para igual discernimiento. La ley presume que mientras la mujer se encuentre bajo la custodia de sus padres o de su tutor se mantiene pura, e impone a los padres o tutores la vigilancia y cuidado necesarios para que tal condición de pureza se mantenga. La jurisprudencia de California que hemos citado, se ha negado a castigar a las alcahuetas o agentes de casas de prostitución, cuando la prueba demuestra, que la mujer inducida a dedicarse habitualmente a la prostitución, había abandonado su casa y había tenido ya experiencia carnal repetida con otros hombres. Por lo tanto, para probarse el delito de celestinaje, tanto bajo la primera modalidad como bajo la segunda del art. 260 del Código Penal de Puerto Rico,

446

debe alegarse y establecerse por la prueba, que la mujer inducida a prostitución pública u ocasional, es menor de 21 años, soltera, y hasta entonces reputada por pura.

Debe confirmarse la resolución apelada.