Louis JONES, Petitioner,

v.

Lake F. RUSSELL, Warden Tennessee State Penitentiary, Respondent.

Civ. A. No. 2185.

United States District Court
E. D. Tennessee,
Northeastern Division.

May 20, 1969.

Louis Jones in pro. per.

Thomas E. Fox, Deputy Atty. Gen., State of Tennessee, Nashville, for respondent.

## MEMORANDUM OPINION

NEESE, District Judge.

The petitioner Mr. Jones is in custody of the respondent pursuant to the judgment of the Criminal Court of Greene County, Tennessee. He exhausted his remedies for relief under Tennessee law in two applications for the state writ of habeas corpus, 28 U.S.C. §§ 2254(b), (c), in the first of which a final decision was not forthcoming for about two and one-half (2½) years and only after resort to the Supreme Court of the United States, Jones v. Russell (1968), 390 U.S. 199, 88 S.Ct. 902, 19 L.Ed.2d 1040, where the Attorney General of Tennessee confessed error in the Tennessee Supreme Court. The petitioner was frustrated in his effort to appeal the denial

by the aforenamed state court of his second application for such state writ, raising for the first time the question presented herein, because the judge thereof discriminatorily failed to comply with the applicable statutes of Tennessee requiring his giving written reasons for such denial and with the mandate of the Tennessee Supreme Court to make further and final disposition thereof.

This Court found these circumstances rendered ineffective the corrective processes of the state of Tennessee to protect the rights of this particular prisoner, 28 U.S.C. § 2254(b), memorandum opinion of November 27, 1968, 294 F. Supp. 423, and accepted jurisdiction. The respondent was ordered to show cause on April 1, 1969 why the federal writ of habeas corpus should not be granted, and an evidentiary hearing ensued on that date. Thereafter, the petitioner was enlarged on bail bond to this Court, and consideration of his application was continued until April 29, 1969 on motion of the respondent, at which time another evidentiary hearing was conducted.

The only claim of the petitioner herein necessary to be considered is in his words, that the Criminal Court of Greene County "* * * lacked jurisdiction of the person himself (Louis Jones) also the subject matter because: it was never established that the alleged crime [for which he is now in bailed custody] actually happened in Greene County. The records do not show the exact place or scene [sic] the alleged crime occurred. * * *"

"Petitioner contends: that he was parked with Dorothy Wills, in the adjoining county of Cocke. * * *"

Proof of the venue charged in an indictment in Tennessee is both a constitutional right of the accused and a fact, essential to the jurisdiction of the trial court, where venue of the crime must have been proved by a preponderance of the evidence. Harvey v. State (1964), 213 Tenn. 608, 612 [2] [3], 376 S.W.2d 497. Unless venue was proved

in State of Tennessee v. Louis Jones et al. on May 15–17, 1961 in the Criminal Court of Greene County, Tennessee, that court had no jurisdiction to enter the judgment which confined Mr. Jones in the state prison.

At the time of Mr. Jones' aforementioned trial, although he was confronted with an indictment charging him with a capital offense, there was no provision of Tennessee law requiring the preservation of a transcript of the record of the proceedings. The testimony was transcribed by a court reporter at the expense of the defendants, however; but there was no appeal perfected from their convictions, and the evidence was never transcribed. This court reporter testified herein that she had searched unsuccessfully for the pertinent shorthand notes and sound recordings.

Mr. Jones testified herein that he was present during the entire trial in which he was convicted, and that there was no evidence offered as to the county in which the crime of rape of Mrs. Wills, for which he was being tried, was committed. The offense was alleged to have been committed on February 7, 1961. Mr. Jones testified that the purported victim "* * * got up and testified that we was [sic] on a back road somewhere, but she didn't know where. * * * [S]he stated we parked in the Mosheim community [which this Court notices judicially is in Greene County, Tennessee] * * * at the high school for approximately fifteen minutes and drank a beer. * * * She stated we left there and went on a country road, and she said we crossed a bridge, but said she did not know where. * * * This girl and I—we were parked on a bridge. I don't know if I can explain it to the Court: it is next to Pate's hill across the Nolichucky river in Cocke County. * * * [W]here we parked —me and her [sic]—it was in Cocke County. And she testified this and so did I. * * * [W]here we were parked at [sic], she testified it was across the bridge. I can show you di-

rectly where we went to. Where the place is: it is in Cocke County, across the Cocke County line at the river bridge down next to Pate's hill. * * * [A]pproximately less than half-a-mile across the river bridge you go into Cocke County. We went approximately three miles past that to the man's house that sold whiskey, but we didn't get no whiskey there. The road circles around the house and comes back on the highway, and on that circle is where we parked at [sic]. * * * [T]here wasn't nothing testified [sic] what county. She testified where we parked at. * * * [S]he said it was on back past the bridge. * * * In fact, she testified that I threatened to throw her off the bridge. That is the way she proved I forced [emphasis supplied] her to have sex relationship, said I forced—threatened to throw her off the bridge. * * * [T]he Cocke County line is approximately half-a-mile or less on the other [Cocke County] side of the bridge. * * *

"* * * [A]fter that * * * we came back into Greene County. That was after [emphasis supplied] the rape was supposed to have happened. * * * We went first to a boy's house named Jerald Bible * * * hunting some whiskey. He didn't have none. We was [sic] in her truck. He got in the truck with us. He got in the truck with us, and we went to Mont Hawk's. * * * [W]e stayed in there approximately thirty minutes. * * * She wouldn't come in. She stayed in the truck. * * * We left there and started taking her home. * * * We got stuck at a barn, ran-off in a ditch. It [the barn] belonged to Mr. Hendrix. Jerald Sauceman lived there. He helped us get the truck out. * * * [N]obody [was with us in Cocke County] but Miss [sic] Wells and myself. * * *"

Thus, Mr. Jones is positive in his testimony that there was no evidence introduced on the trial of his criminal case from which the trial jury might have found, by inference or otherwise, that

the alleged rape occurred in Greene County, Tennessee. The respondent undertook to show by other witnesses that such evidence was introduced on his trial.

Honorable Herman Conway Smith, the judge who presided at the trial in which Mr. Jones was convicted, testified that he recalled "* * * there was testimony of two or three assaults on the female. Part of it occurred in the Mosheim area near, as I recollect it, [involving] the use of, the Mosheim school and some barn. * * * There were four defendants. * * * They were tried together. * * * Mr. Jones testified in the case * * *." Judge Smith testified that he could not find any personal records of this trial, but he testified from a copy of material which he had used to prepare his instructions to the jury, this being only "* * * a commencement of a charge clipped together in the same way it was when the case was tried. * * *" He stated he always submitted to juries in rape cases in the same language the factual issue of venue but could not relate the language used in this instance by independent recollection.

Judge Smith testified that, "* * * trying hundreds of cases a year over a period that has been eight years, I forgot who all of the witnesses were. I do remember that it either started at the Big Top or one of the drive-ins here [Greeneville, in Greene County, Tennessee]. or ended there. As I remember, it started there * * *. I remember the testimony that [a codefendant] Mr. Hawk, immediately after Louis Jones had had sex relations with this woman, that Mr. Hawk then—he told[1] that—he saw an opportunity to satisfy himself, and he did it, too. * * * But, as to who testified about venue, I do not remember. * * * [M]y recollection is that one or more officers took this girl to a certain place, and she pointed * * * out [where the rape occurred]. * * * The testimony as to the viola-

tion of the girl by Mr. Hawk, as I remember rather positively, that it happened within minutes after a sex relation with Louis Jones with this woman, and my definite recollection is that that instance took place in Greene County, Tennessee. * * * I do not [remember the specific testimony]. * * * I don't recall all of the details. I don't remember what officers testified in the case. * * * [It] is my recollection [that the officers testified they took this girl to a certain place, and she pointed it out] * * *. I think I [remember this]. * * *"

A deputy sheriff of Greene County, Tennessee at the time, Mr. Hubert Wilhoit, testified that he heard a part of the testimony. It was his recollection that the prosecutrix had testified that one offense of rape had occurred at a school building and another "* * * at an old barn * * *." He stated that photographs of an old barn were exhibited in evidence, and that this was the barn of Harry Brown in Greene County, Tennessee, located roughly three or more miles from Cocke County. He testified the prosecutrix, when the pictures were shown to her, had testified "* * * that, that was the barn * * *", but he was unable to remember whether the prosecutrix had testified that a rape occurred anywhere other than at the old barn.

One of the jurors in that case, Mr. Carl Ward, testified that the prosecutrix therein had testified that two rapes had occurred, one at a schoolhouse and the other "* * * at Harry Brown's barn, or near or about that place. * * *" However, afterward he testified that he couldn't "* * * say whether—if it was at Harry Brown's barn, but one of the lawyers asked her if it was Harry Brown's barn, and she said 'yes'. * * *" He did not recall whether the prosecutrix had testified that the offense had occurred in Greene County, Tennessee. He stated further that the prosecutrix had testified that two men

---

1. Judge Smith testified earlier that Mr. Hawk did not testify in his defense.

had raped her at the barn: "* * * I believe she said Louis Jones and an old man * * *." Mr. Ward's memory was admittedly hazy on all the crucial points relating to venue.

Another such juror, Mr. Wendell Holladay, testified that all he could remember was that the prosecutrix had testified that the offense had taken place "* * * close to a barn that had been designated as Harry Brown's barn * * *", but that he could not "* * * recall of anything [sic] to pin-point and say [there was proof on the trial that] it was in Greene County. * * *" In any event, this witness recalled that the prosecutrix had testified that one of the defendants in that trial, other than Mr. Jones, had committed the rape at or near a barn.

The more positive testimony offered by the respondent emanated with the arresting officer, Mr. Guy Keifer, who testified that he heard the prosecutrix testify that the rape by Mr. Jones "* * * happened in Greene County. * * * She said they went to Midway to an old school building, and from there over to—picked up Jerald Bible, and went out to Harry Brown's barn—an old barn, she didn't know the name of it, went to Boyd Hawk's and got some whiskey, and went to an old barn on a hill. * * * She said it was in that vicinity; she didn't say where the barn exactly was. * * *" Contrary to one or more of the other respondent's witnesses, this arresting officer testified that he did not take Mrs. Wells to seek the place where the rape took place, and that she did not show this witness where the offense took place.

■ From the aggregate of this conflicting testimony concerning events of eight long years ago, this Court is unable to find any credible testimony of sufficient weight to establish that there was evidence on the petitioner's trial in May, 1961 from which the jury which found him guilty of rape could have

found, directly or by inference, that the offense he committed occurred in Greene County, Tennessee. The alleged victim, Mrs. Dorothy Wells, could not be located to be presented as a witness herein by the respondent. There is no record of the pertinent proceedings. The trial judge does not remember which witness testified about venue. Mr. Wilhoit does not recall whether the prosecutrix testified there were one or more rapes committed by Mr. Jones. One juror testified that there were two acts of rape committed by Mr. Jones, one at or near Harry Brown's barn in Greene County. Another juror stated that the prosecutrix had testified that Mr. Jones did not rape her at that place. The arresting officer said that the prosecutrix testified that the rape of her by Mr. Jones took place in Greene County, Tennessee,[2] but that she was unable to testify exactly where the barn was located. This Court is not sufficiently satisfied from evidence of this speculative nature to rule that the petitioner, who may have already been required to surrender eight years of his freedom under the sentence of a court which may have lacked jurisdiction to thus deprive him of his liberty, is in the construtive custody of the respondent lawfully.

■ The sole reason this Court has accepted jurisdiction of this matter on its merits is that the petitioner claims that he is in custody in violation of the Constitution of the United States. 28 U.S.C. § 2254(a); Willis v. Tollett, etc. et al., D.C.Tenn. (1968), 300 F.Supp. 273, this district and division. The decided preference of this Court is not to interfere in any way with the administration of justice by the courts of Tennessee. But, the petitioner, an American as well as a Tennessean, has federal rights, as well as state rights. His federal right to the due process of law which the national Constitution guarantees he shall receive has been violated. He is in constructive custody of the respondent in

---

2. If so, this was a conclusion on the part of the prosecutrix, of course, and inadmissible in evidence.

violation of the Fourteenth Amendment to the Constitution of the United States, relating to due process of law.

The duty of this Court in this situation is crystal clear. The federal writ of habeas corpus is extended to any prisoner anywhere in this nation when he is in custody in violation of the Constitution of the United States. 28 U.S.C. § 2241(c) (3). The undersigned judge is adjured to dispose of Mr. Jones' application "* * * as law and justice require * * *" 28 U.S.C. § 2243.

If Mr. Jones' second application for the state writ of habeas corpus, raising for the first time the jurisdictional question presented here, had been properly disposed of as the law and justice require by the state courts, the inevitable result would have been a granting of a new trial in the Criminal Court of Greene County. Venue may, or may not, have been proved in the former trial as to the defendants other than Mr. Jones. (That issue is not before this Court.) Venue, and thus jurisdiction, may, or may not, be proved as to any offense of rape by Jones on a new trial, if the state of Tennessee wishes to prosecute him further on the somewhat tenuous substantive facts and circumstances made to appear on the hearings herein.

Therefore, the law and justice seem to require[3] that it be determined surely

whether Mr. Jones was accorded his federal right to due process of Tennessee law, Fourteenth Amendment to the federal Constitution, by a retrial in the Criminal Court of Greene County, Tennessee, or his release on the rape charge if not retried by the state of Tennessee within a reasonable time. Rule 81(a) (2), Federal Rules of Civil Procedure.

A proper order is being entered.

---

3. Although this Court's concern herein has been with the problem of whether the federal constitutional right of Mr. Jones to due process of Tennessee law as regards the jurisdiction of the state trial court to sentence him for rape, his deprivation of yet another right is conceded to have occurred in his trial of May, 1961 on the abduction charge.

Thomas E. Fox, Esq., the deputy attorney general of Tennessee, notes in his résumé of the evidence herein that Mr. Jones' alleged abduction victim was then a married woman and, as such, not within the purview of T.C.A. § 39-3708; State v. Davidson (1915), 134 Tenn. 482, 483-487, 184 S.W. 18. Certainly, it is to be expected that the state of Tennessee will on its own initiative relieve the petitioner of a sentence under a conviction which was known for over half-century at the time of his trial to have been im-

permissible under Tennessee's own interpretation of such law!

Note: Contrary to the usual handling which has come to be expected of prisoners whose apply to this Court for relief, the petitioner Mr. Jones has presented his claims in a reasonable and orderly manner in a multiplicity of contracts and appearances. His application was filed *pro se*, and he appeared in *propria persona* at the evidentiary hearings. He acquitted himself with distinction in filing pleadings for himself and with more distinction in representing his interests in his own person. At no time did this Court have any cause to consider whether Mr. Jones required the assistance of charitable counsel.

The Court has been provided in this instance with a sense of refreshment by Mr. Jones which has been exhilerating.